UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**THOMAS SZCZESNY,**

              Plaintiff,

v.

**CITY OF TROY**, a municipal corporation,

**EVAN LEITHAUSER**, in his personal
and professional capacities,

**SCOTT ALLAN** in his personal and
professional capacities,

**ALEJANDRO PARRA**, in his personal and
professional capacities,

**GAIL PARRA**, in her personal and
professional capacities,

and

**BRIAN WARZECHA**, in his personal and
professional capacities,

              Defendants.
_____/

Case No:  2:25-cv-12836-GAD-EAS
Hon. Gershwin A. Drain
Mag. Judge: Elizabeth A. Stafford

**PROOF OF SERVICE**

The undersigned certifies that a copy of the document with Proof of Service affixed thereto was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses as directed on the pleadings on  **JULY 1, 2026**_____:
VIA:
☐ U.S. Mail ☐ Federal Express ☐ Email
☐ Facsimile ☐ Hand Delivery
☒ **EFS [US Dist Crt e-file & serve]**
☐ **ESO [e-serve, only via MiFILE]**

I declare under the penalties of perjury that this Proof of Service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

__/s/  Susan Mount-Campbell



**Law Offices of Jason A. Waechter**
**AARON R. MARTINEZ (P86228)**
**JASON A. WAECHTER  (P47651)**
Attorneys for Plaintiff
19080 W. Ten Mile Road
Southfield, MI 48075
(248) 355-4701  /  Fax: 248-281-0006
aaron@877powerlaw.com; jason@877powerlaw.com
Paralegal Cris Vivian: cris@877powerlaw.com

**Rosati Schultz Joppich & Amtsbuechler PC**
**MARGARET T. DEBLER (P43905)**
**AMANDA P. WASKE (P81128)**
Attorneys for Defendant Officers
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331
(248) 489-4100
mdebler@rsjalaw.com; awaske@rsjalaw.com
_____/

**Troy City Attorney's Office**
**LORI GRIGG BLUHM (P46908)**
**JULIE QUINLAN DUFRANE (P59000)**
Attorneys for Defendant City of Troy
500 W. Big Beaver Road
Troy, MI 48084
(248) 524-3320
bluhmlg@troymi.gov; j.dufrane@troymi.gov

**PLAINTIFF'S MOTION TO COMPEL
DEFENDANT CITY OF TROY'S
RESPONSES TO PLAINTIFF'S FIRST
DISCOVERY REQUESTS
And BRIEF IN SUPPORT**

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT CITY OF TROY'S RESPONSES TO
PLAINTIFF'S FIRST DISCOVERY REQUESTS**

NOW COMES Plaintiff, THOMAS SZCZESNY, by and through his attorneys, LAW OFFICES OF JASON A. WAECHTER, and pursuant to Federal Rules of Civil Procedure 26(g) and 37(a) and E.D. Mich. LR 7.1(a) and 37.1, moves this Court for an Order compelling Defendant City of Troy to provide complete and adequate responses to Plaintiff's First Discovery Requests, and states as follows:

1. Plaintiff Thomas Szczesny filed his Complaint and Jury Demand in this Court on September 8, 2025, asserting claims under 42 U.S.C. § 1983 and Michigan law arising out of a September 22, 2023 collision in which a City of Troy patrol vehicle struck Plaintiff's motorcycle, and the City's and its officers' subsequent conduct including procurement of a blood draw warrant and pursuit of a criminal prosecution against Plaintiff.

2. On May 1, 2026, Defendant City of Troy served its Responses and Objections to Plaintiff's First Discovery Requests, verified by Police Lieutenant Frank Shuler.

3. The City's responses are facially deficient across multiple categories:

   a. the City altered native Axon video file names; asserted boilerplate overbreadth objections without factual support;

   b. offered partial productions qualified as "available" while claiming completeness; unilaterally narrowed requests to "named Defendants" where the requests were not so limited;

   c. made categorical "no documents" and "no communications" representations without providing any ESI search documentation;

   d. withheld documents under a privilege claim without producing a privilege log; and

   e. continued to condition production on a protective order that the City agreed to circulate and subsequently refused to advance.

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006



4. On May 29, 2026, Plaintiff's counsel transmitted a comprehensive meet-and-confer letter to Julie Quinlan Dufrane, Esq., counsel for the City, pursuant to Federal Rule of Civil Procedure 37(a)(1) and E.D. Mich. LR 7.1(a), identifying every deficiency and requesting a meet and confer conference.

5. The specific deficiencies are set forth in detail in Plaintiff's May 29, 2026 Meet-and-Confer Letter, attached hereto as **Exhibit 1**, and in the City's Responses to Plaintiff's First Discovery Requests, attached hereto as **Exhibit 2**.

6. Plaintiff's counsel made three separate attempts to secure a conference over the following month — on May 29, June 11, and June 24, 2026 — without resolution. Emails attached hereto as **Exhibit 3**. As of the date of this Motion, no conference has been held and no deficiency identified in Exhibit 1 has been remedied.

7. E.D. Mich. LR 37.1 requires counsel to "confer in advance of the hearing in a good faith effort to narrow the areas of disagreement." Plaintiff has more than satisfied that obligation. The City has not.

8. Plaintiff has in good faith conferred and repeatedly attempted to confer with counsel for the City of Troy in an effort to obtain full and complete discovery responses without court action. The City's failure to meaningfully engage over more than a month has made this Motion necessary.

9. Federal Rule of Civil Procedure 37(a)(5) provides that if this Motion is granted, the Court must require the City, its counsel, or both to pay Plaintiff's reasonable expenses incurred in making this Motion, including attorney fees, unless the City's failure was substantially justified.

**WHEREFORE**, Plaintiff THOMAS SZCZESNY respectfully requests that this Honorable Court enter an Order **[See Exhibit #4, proposed Order]**: (a) compelling Defendant City of Troy to serve complete, verified, and supplemented responses to all deficient requests identified in

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006



Exhibit 1 within fourteen (14) days; (b) compelling the City to either file a properly supported Rule 26(c)(1) protective order motion within seven (7) days or immediately produce all documents withheld on that basis; (c) compelling the City to produce a privilege log compliant with Fed. R. Civ. P. 26(b)(5)(A)(ii) within seven (7) days; (d) compelling the City to provide written ESI search certification from counsel as an officer of the Court documenting custodians searched, systems queried, search terms, and date ranges for all requests answered with "no documents" or "no communications" representations; (e) compelling the City to reproduce all video files in their native Axon naming format; and (f) awarding Plaintiff his reasonable expenses, including attorney fees, together with such further relief as this Court deems just.

<div style="text-align:right">

Respectfully submitted,
**LAW OFFICES OF JASON A. WAECHTER**

*/s/  Aaron R. Martinez*
AARON R. MARTINEZ (P86228)
JASON A. WAECHTER (P47651)
Attorneys for Plaintiff
19080 W. Ten Mile Rd, 2nd Fl
Southfield, MI  48075
(248) 355-4701

</div>

Dated: July 1, 2026



**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEFENDANT CITY OF TROY'S RESPONSES TO PLAINTIFF'S FIRST DISCOVERY REQUESTS**

## I.    INTRODUCTION

This is a federal civil rights case in which a catastrophically injured motorcyclist seeks to hold the City of Troy and five of its officers accountable for a high-speed police collision and a subsequent false and pretextual OWI prosecution intended to shield those officers from liability. The City has admitted that PV 931's emergency lights and siren were not activated at the time of

<div style="writing-mode:vertical-lr">

**LAW OFFICES OF JASON A. WAECHTER**
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

</div>

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

the collision. [1] The City has admitted that Defendant Officer Scott Allan did not personally observe Plaintiff operating a vehicle before swearing the search warrant affidavit attesting to personal observations of impairment. [2] The City has admitted that it did not impose discipline on Leithauser for the Incident, and did not impose discipline on Allan for the search warrant affidavit relating to Plaintiff. [3]

And yet the City controls virtually all of the documentary evidence bearing on what happened — the training records, the internal communications, the early-intervention data, the collision review findings, the policy documents — and has responded to Plaintiff's First Discovery Requests with a campaign of boilerplate objections, categorical "no documents" denials unsupported by any ESI search documentation, selective productions asserted as complete, privilege assertions without a privilege log, altered video evidence, and the weaponization of a protective order process the City agreed to initiate and then abandoned.

When Plaintiff's counsel identified every one of these deficiencies in a detailed eighteen-page meet-and-confer letter on May 29, 2026, the City responded with more than a month of silence. Despite three separate follow-up attempts, no conference has been held and no deficiency has been remedied. Fact discovery closes on August 12, 2026, and Plaintiff's expert reports are due on October 12, 2026. Depositions of all five Defendant Officers and the City's 30(b)(6) representative are on calendar. Every day that passes without complete production narrows the window in which to conduct meaningful depositions, supplement expert analyses, and prepare for trial. Plaintiff asks this Court to compel full compliance and to award the fees and costs this conduct has forced Plaintiff to incur.

## II.    BACKGROUND

---

[1] Defendant City of Troy's Responses and Objections to Plaintiff's First Discovery Requests, RFA COT-4 and COT-5 (May 1, 2026) (Exhibit 2).
[2] Defendant City of Troy's Responses, RFA COT-14, RFA COT-15, and RFA COT-16 (Exhibit 2).
[3] Defendant City of Troy's Responses, RFA COT-14 (Exhibit 2).

On September 22, 2023, City of Troy Officer Evan Leithauser, responding to a minor fender bender call and without activating his emergency lights or siren, was traveling approximately 23 miles per hour over the posted speed limit when his patrol vehicle struck Plaintiff Thomas Szczesny's motorcycle near Stephenson Highway and Maple Road. Plaintiff suffered a displaced pelvic fracture, lower leg paralysis, bowel and bladder impairment, and other severe and permanent injuries.

Rather than requesting an independent investigation by Michigan State Police or the Oakland County Sheriff's Office — neither of which has a cost-sharing or collaborative relationship with Troy PD — the City assigned the investigation to SOCCIT, the Southeastern Oakland County Crash Investigation Team, a multi-agency unit of which Troy is a founding member. Troy SOCCIT members who responded to the scene included four of the five named Defendant Officers. The City has admitted that SOCCIT has no written policy governing investigations when a member agency officer is involved in a collision and no written recusal policy. [4]

During the investigation, Officer Scott Allan obtained a blood draw warrant based on an affidavit that Plaintiff contends omitted material facts, including Defendant Leithauser's unlawful speed, Leithauser's inconsistent and false statements on scene, Leithauser's lack of lights and sirens, and the administration of pain medication prior to the blood draw. The OWI charge was dismissed by entry of Nolle Prosequi on December 5, 2024.

Plaintiff filed suit on September 8, 2025, asserting claims under 42 U.S.C. § 1983 for unreasonable seizure, malicious prosecution, and *Monell* municipal liability, alleging that the City's customs, policies, and failure to train and supervise its officers were the moving force behind the constitutional violations he suffered. On May 1, 2026, the City served its Responses and Objections to Plaintiff's First Discovery Requests, verified by Police Lieutenant Frank Shuler. As

---

[4] Defendant City of Troy's Responses, RFA COT-75 and COT-76 (Exhibit 2).

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

detailed below, those responses are riddled with deficiencies that cannot be squared with the Federal Rules or the precedents of this Court.

### III. PLAINTIFF'S MEET-AND-CONFER EFFORTS: A MONTH OF SILENCE

On May 29, 2026, Plaintiff's counsel transmitted a meet-and-confer letter to Julie Quinlan Dufrane, Esq., counsel for the City, pursuant to Federal Rule of Civil Procedure 37(a)(1) and E.D. Mich. LR 7.1(a), identifying every deficiency and requesting a conference within seven (7) days. (Exhibit 1)

On June 1, 2026, Ms. Dufrane sent a brief response indicating availability on June 4. Plaintiff's counsel was out of the office and unavailable on that date. On June 11, 2026, Plaintiff's counsel sent a follow-up email and left a voicemail requesting available dates. **The City did not respond by email or phone.** On June 24, 2026, Plaintiff's counsel again emailed Ms. Dufrane requesting availability for the remainder of that week. **The City again did not respond.**

More than a month has elapsed since the meet-and-confer letter was transmitted. No conference has occurred. Not a single deficiency has been resolved. No supplemental production has been made. The City has not even acknowledged the substance of the letter. E.D. Mich. LR 37.1 requires counsel to "confer in advance of the hearing in a good faith effort to narrow the areas of disagreement." Plaintiff has more than met that obligation. The City's pattern — a brief window of claimed availability followed by weeks of total silence in the face of repeated follow-up — is not good-faith engagement. It is stonewalling.

### IV. GOVERNING LEGAL STANDARDS

#### A. The Federal Discovery Rules Demand Specific, Good-Faith Responses.

Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Rule 34(b)(2)(B) requires that for each item or category, the responding party must either state that

<div align="center">- 7 -</div>

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006



production will be permitted or "state with specificity the grounds for objecting to the request, including the reasons." Rule 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."

**B.  Boilerplate Objections Are Per Se Invalid and Constitute a Rule 26(g) Violation.**

In *Siser North America, Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 202 (E.D. Mich. 2018), Magistrate Judge Stafford wrote that discovery "is the lifeblood of litigation and, as such, it 'must be initiated and responded to responsibly, in accordance with the letter and spirit of the discovery rules, to achieve a proper purpose (i.e., not to harass, unnecessarily delay, or impose needless expense).'"

In *Siser*, 325 F.R.D. at 209-10, Judge Stafford held: "Evasive and incomplete answers to discovery requests are tantamount to no answer at all," citing *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 502 (N.D. Ohio 2013), and *Beard v. Hawkins*, No. CV 14-13465, 2016 WL 6787628, at *7 (E.D. Mich. Sept. 13, 2016).

In *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 359 (D. Md. 2008), the court held that "the very act of making such boilerplate objections is prima facie evidence of a Rule 26(g) violation, because if the lawyer had paused, made a reasonable inquiry, and discovered facts that demonstrated the burdensomeness or excessive cost of the discovery request, he or she should have disclosed them in the objection, as both Rule 33 and 34 responses must state objections with particularity, on pain of waiver." *Siser*, 325 F.R.D. at 202, cites *Mancia* approvingly for this same principle.

"Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 186 (N.D. Iowa 2017).

**C.  A Responding Party Cannot Unilaterally Narrow Requests Without Factual Justification.**

Responses met with blanket objections and a statement that discovery is being provided



LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

"subject to and without waiving" those objections are "meaningless, unlawful, and can result in a waiver of the objections." Rule 34(b)(2)(C) is explicit: "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." A party may not selectively answer a narrower version of a request than was asked and claim completeness.

### D.  Privilege Requires a Log; Failure to Provide One Is a Rule 26(g) Violation.

When a party withholds otherwise discoverable documents by claiming privilege, Rule 26(b)(5)(A)(ii) requires a privilege log enabling the opposing party to assess the claim. In *Siser*, 325 F.R.D. at 204, Judge Stafford found a Rule 26(g) violation where the defendant "never produced a privilege log" despite the Court's prior order specifically requiring one. The failure to timely provide an adequate privilege log may constitute a waiver of any applicable privileges, including attorney-client privilege and work-product protection.

### E.  ESI Certification Must Be Documented.

In *Warner v. Gilbarco, Inc.*, 820 F.Supp.3d 629, 633 (E.D. Mich. 2026), Magistrate Judge Patti — hearing a matter assigned to Judge Drain — found ESI production obligations satisfied only after defense counsel's written supplemental response documented specific search parameters including custodians, date ranges, and search terms applied, and the Court found that submission "suffices and complies with its prior order." The court separately confirmed that a preservation certification was satisfied only because "that certification was given on the record in open court." The City's bare "not aware of" and "no documents" representations, unaccompanied by any documentation of custodians searched, systems queried, search terms applied, or date ranges used, have not provided the documentation that *Warner* confirms is required.

### F.  The Duty to Supplement Is Continuous.

In *Trapp v. Federal Express Corp.*, 647 F.Supp.3d 567, 569 (E.D. Mich. 2022), the Eastern



LAW OFFICES OF JASON A. WAECHTER

19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075

TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

District held: "The duty to supplement discovery does not cease upon the close of the applicable discovery period," citing *Everlight Electronics Co. v. Nichia Corp.*, No. 12-CV-11758, 2015 WL 412184, at *1 (E.D. Mich. Jan. 30, 2015). Rule 26(e)(1) imposes a continuous obligation to supplement or correct all responses to interrogatories, requests for production, and requests for admission whenever the responding party learns its response is incomplete or incorrect. To the extent the City qualified any production as comprising only "available" or "preserved" materials, it bears an ongoing obligation to identify what is no longer available and to supplement as circumstances change.

### G. The Burden to Seek Confidentiality Protection Rests on the Withholding Party.

In *Peterson v. Corby*, 347 F.R.D. 192, 196 (E.D. Mich. 2024), Judge Stafford held that a party seeking to withhold documents on confidentiality grounds "should have ... moved for a protective order under Rule 26(c)(1), specifying facts showing a clearly defined or serious injury resulting from disclosing the policies." The burden rests on the withholding party to file the motion — not on the requesting party.

### H. Sanctions Are Mandatory.

In *Siser*, 325 F.R.D. at 208, Judge Stafford reiterated that Rule 26(g) "requires a court to impose sanctions for any violation without 'substantial justification,'" citing *Jones v. Illinois Central R. Co.*, 617 F.3d 843, 854 (6th Cir. 2010). Rule 37(a)(5) requires the Court, upon granting a motion to compel, to require the non-complying party or its counsel to pay the movant's reasonable expenses, including attorney fees, unless the failure was substantially justified.

## V.   ARGUMENT

The City's discovery responses fall into five recurring categories of deficiency. Together, they constitute a deliberate pattern of evasion.

### A. The City Altered Native Axon Video File Names, Destroying Embedded Chain-of-Custody Metadata.



LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

Plaintiff received an Axon link containing 63 items — primarily video files. The native naming format generated by the Axon system preserves critical metadata, including the recording officer's camera unit, the date and time the recording began, and the unit's serial number, in a format such as: "Axon_Body_3_Video_2023_09_22_2124_X60A1575M.mp4." The City altered every file name to read "PERSONAL INJURY ACCIDENT" with sequential numbering, destroying the embedded chain-of-custody information and frustrating Plaintiff's ability to identify which officer recorded each video.

This is not a formatting technicality. Plaintiff cannot meaningfully examine the Defendant Officers at deposition about specific video they recorded if the City has stripped the identifiers linking each file to its recording officer and timestamp. The City must reproduce all video in native naming format immediately.

### B.  The City Is Using a Self-Created Protective Order Impasse to Indefinitely Withhold Critical Policy Documents (RFP Nos. 11, 15, 21, 41, and 43).

At the January 22, 2026 Rule 26(f) conference, the parties agreed that a protective order was needed and the filed Joint Discovery Plan reflects that the City's counsel would circulate a template. Plaintiff reviewed the proposed order, provided revisions, and made repeated attempts to facilitate its submission to the Court — all without a substantive response from the City. The City has simultaneously continued to withhold seven General Orders (Nos. 3, 5.17, 5.2, 9, 11, 13, 64, and 114), citing the need for a protective order the City itself has declined to advance.

As *Peterson v. Corby*, 347 F.R.D. at 196, makes clear, a party with confidentiality concerns "should have ... moved for a protective order under Rule 26(c)(1), specifying facts showing a clearly defined or serious injury resulting from disclosing the policies." The City has not done so. It cannot use a procedural mechanism it agreed to initiate, and then abandoned, as an indefinite shield against production.



LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

The harm to Plaintiff is direct and concrete. The City has admitted that it denied imposing discipline on either Leithauser or Allan following the Incident. The General Orders governing emergency vehicle operations, OWI investigations, blood draw warrants, and warrant affidavit integrity are the policies under which those decisions were made. Plaintiff cannot confront the Defendant Officers at deposition on the policies that governed their conduct on September 22, 2023 while those policies remain withheld. The City must either file a substantiated Rule 26(c)(1) motion within seven days or produce all withheld materials immediately.

### C. The City's Responses to Specific RFPs Are Evasive, Incomplete, or Directly Contradicted by the City's Own Documents.

The following responses each independently constitute an evasive or incomplete answer that is "tantamount to no answer at all" under *Siser*, 325 F.R.D. at 209-10.

**RFP No. 1 — Body Camera and In-Car Video.** The City objected as "overly broad" and produced "available BWC and ICV recordings applicable to the events that occurred on September 22, 2023" via Axon link. Despite designating Leithauser's call as an "emergency," Officer Lietzow's BWC and ICV footage from CFS 23-28387 — the emergency call Leithauser was responding to — was not produced. No activation/deactivation logs, categorization logs, or redaction logs were produced, and pre/post-event buffers have not been confirmed in their native state. Plaintiff cannot challenge any officer's camera activation decisions without the complete camera records.

**RFP No. 2 — CAD and 911 Materials.** The City objected as "overly broad" and produced "preserved" 911 calls and radio traffic at Bates 00126-00128. The 911 call audio for CFS 23-28387 was not produced — only radio traffic. The full CAD D-Card with complete event history, unit assignment logs, priority classification, and timestamps was not produced. CAD audit logs were not produced at all.

**RFP No. 3 — AVL/GPS and Telematics Data.** The City objected as "overly broad" and



LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

referred only to the Auburn Hills Case Report at Bates 00163-00207. AVL/GPS logs for PV 931 before 21:09 hours — the critical pre-collision window — are not in that report and have not been separately produced. MDT data for involved officers has not been produced. Telematics data showing light/siren status, which the City admitted in RFA COT-10 is "maintained and/or stored through AXON's camera system," has not been produced as a discrete data set. This is objective evidence of Leithauser's speed and light/siren status — it goes to the core of liability.

**RFP No. 5 — Officer Communications During the Investigation.** The City responded that "the responsive information in the possession, control or custody of the City of Troy is included in Auburn Hills Case Report NO. 23-0018832 and Bates stamped page number 00161." One page does not answer a request for all MDT messages, emails, and texts during an active multi-agency SOCCIT investigation. No ESI search documentation has been provided.

**RFP No. 6 — Third-Party Video.** The City produced a Gas Station Video and 11-22 Shell Video via Axon link. The Troy PD Case Report documents that Officer Huck retrieved CCTV footage from Henry Ford Health Security Corporal Sayej on approximately September 26, 2023, and turned it over to Sgt. Warzecha. This footage is not on the Axon list at Bates 00641-00647 and is not addressed anywhere in the City's response. It was physically collected by a Troy SOCCIT officer and is within the City's possession and control. No chain-of-custody documentation has been produced for any third-party video.

**RFP No. 7 — Patrol Vehicle 931 Records.** The City's response to RFP No. 7 is mislabeled "RESPONSE TO RFP NO. 8" and refers only to Bates 00455-00616. Internal communications authorizing, approving, or discussing the listing, auction, and sale of PV 931 on GovDeals in September 2025 — including any reference to this lawsuit or any litigation hold — are absent from the production. PV 931 appears to have been sold on



LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

GovDeals eleven days after this lawsuit was filed. Plaintiff cannot assess whether the vehicle disposal violated the City's litigation hold obligations without these records.

**RFP No. 8 — Search Warrant Packet.** The City referred to Bates 00129-00146. The request specifically sought all drafts of the warrant affidavit and all communications among officers about its content. Allan's own discovery answers confirm he spoke with A. Parra, watched BWC footage, and consulted G. Parra before swearing the affidavit. Notes and communications generated during that process have not been addressed. The truthfulness of the warrant affidavit is at the heart of Plaintiff's malicious prosecution claim.

**RFP No. 13 — Communications with Prosecutors.** The City "objects to this request because it is overly broad, unduly burdensome, and not narrowly tailored" and produced nothing. Yet the City simultaneously produced the Dufrane/Camaj email at Bates 00452-00454 — a communication between City counsel and the Oakland County Prosecutor — under a different production description. Selectively producing one communication with the Prosecutor while withholding the remainder under a boilerplate overbreadth objection is precisely the conduct *Siser* condemns.

**RFP No. 16 — Training Records.** The City "objects to this request for production because it is overly broad and unduly burdensome" and produced "a printout of available training records" at Bates 00684-00804. The City's own production index lists training records for Allan (Bates 00684-00715), Leithauser (00716-00726), A. Parra (00727-00736), and G. Parra (00737-00804). No training records for Defendant Officer Warzecha appear anywhere in the production. Policy acknowledgment forms — signed records confirming each officer received and understood specific policies — were not produced. The "available" qualifier is precisely the kind of incomplete response *Siser* holds is tantamount to no answer at all.

**RFP No. 18 — Critical Incident Reviews and After-Action Reports.** The City "objects to

this request because it is overly broad, unduly burdensome, and not narrowly tailored" and produced nothing, stating "[t]his case is not related to a police pursuit nor is it a use of force case." The request was not limited to pursuit or force reviews — it sought collision reviews and after-action reports for each Defendant Officer specifically. The City sustained a finding of "Improper Conduct" against Leithauser; no Collision Review Board findings or After-Action Reports have been produced. As *Peterson v. Corby*, 347 F.R.D. at 196-97, instructs, Judge Stafford compelled full production of misconduct records in a single-defendant civil rights case. The standard is far more compelling here with five named Defendants.

**RFP No. 22 — SOCCIT Decision Communications.** The City "objects to this request because it is overly broad, unduly burdensome, and not narrowly tailored" and referred to Bates 00316-00384. Internal command communications discussing whether SOCCIT was appropriate given member agency officer involvement, the City Attorney's decision-making analysis, and the Chief-to-Chief written approval referenced in the October 16, 2023 CLEMIS email are not within the interlocal agreement Bates range. None of the substantive decision communications have been identified or produced.

**RFP No. 23 — Troy-Eftink Communications.** The City "objects to this request because it is overly broad" and stated "this information, if it exists, is more likely in the control, custody or possession of others," producing nothing. The City's own documents at Bates 00311-00314 reflect Captain Gobler communicating directly with Sgt. Eftink — specifically sending PV 931 video via Evidence.com in May 2024. A party cannot disclaim possession of communications that its own produced documents confirm exist.

**RFP No. 24 — IA/OPS Files.** The City "objects to this request because it is overly broad" and referred to Bates 00389-00408. Nineteen pages for five officers over ten years in a multi-defendant civil rights case is not a credible complete response. The production index lists Bates 00389-00498 as "Prior crash information" while separately listing Bates 00409-



LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

00437 as the Troy PD Case Report — an unexplained overlap of nearly thirty pages. As *Peterson* instructs, Judge Stafford compelled complete IA file production in a single-defendant case; the standard compels the same here.

**RFP No. 25 — BWC/Emergency Operation Violations, All Officers.** The City "objects to this request because it is overly broad" and stated "there are no responsive documents pertaining to the Defendants named in this lawsuit." The request sought records for any Troy officer — not just named Defendants. The City's unilateral decision to narrow the request, and then assert no documents exist as to the narrowed version, is textbook evasion under *Siser*.

**RFP No. 26 — Early Intervention System Records.** The City responded: "Defendant does not have any documents or information that is responsive to this request." The TPOA Collective Bargaining Agreement the City produced at Bates 00265-00310 specifically references "Guardian Tracking" as a performance monitoring system, with detailed provisions governing its retention, officer removal requests, and litigation-hold preservation obligations. The City produced a labor contract describing its own performance monitoring system and simultaneously claimed no such system records exist. This is precisely the directly contradicted "no documents" response that *Mancia*, 253 F.R.D. at 359, identifies as prima facie evidence of a Rule 26(g) violation.

**RFP No. 28 — Brady/Giglio and Impeachment Materials.** The City responded: "After a search of known and available records, the undersigned is not aware of any documents or information that is responsive to this request." In a §1983 case where the truthfulness of the warrant affidavit and the officers' credibility are central, this categorical denial cannot rest on a bare "not aware of" assertion unaccompanied by documentation of the custodians searched, systems queried, and search terms used.

**RFP No. 30 — Prior Collisions for All Officers.** The City "objects to this request because

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

it is overly broad" and referred to Bates 00255-00264 — Leithauser's prior collision information only. The request covered all five Defendant Officers. Warzecha admitted in his interrogatory answers having "a few minor vehicular accidents related to hitting poles or blocks," records of which have not been produced.

**RFP No. 31 — Risk Management Files.** The City "asserts the attorney-client privilege and attorney work product privilege" and produced nothing. No privilege log was provided. As *Siser*, 325 F.R.D. at 204, held, failure to produce a privilege log is a Rule 26(g) violation. The City's own production index identifies Bates 00438-00443 as "Information sent to MMRMA" — demonstrating that some MMRMA communications were produced while others were withheld, with no explanation for the distinction and no log identifying what was withheld or why.

**RFP No. 37 — Litigation Hold Notice.** The City referred to Bates 00035-39 and 00499-00503. Those Bates ranges are Plaintiff's own preservation demands served on the City — not the City's internal litigation hold notice issued to its own employees. The City's internal directive — its date, recipients, and systems covered — is not privileged. As *Warner*, 820 F.Supp.3d at 635, confirms, a party's preservation certification must be given on the record or in a documented written submission. The significance of this gap is amplified by the apparent sale of PV 931 eleven days after this lawsuit was filed.

**RFP No. 38 — ESI Audit Logs and Axon Records.** The City referred to Bates 00311-00314 and 00641-00647 and stated the City does not "claim" that data is "missing." The complete Axon Standards audit trail for EVT-00000117 — all access, upload, download, modification, recall, and deletion events — has not been produced. The email from Axon representative Alex Padilla referenced as "included" in the January 19, 2024 Gobler memorandum was not separately produced. Documents at Bates 00258 and 00262 bear April 21, 2026 print dates — meaning the case file was accessed and printed during active



LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

litigation — with no metadata for that access produced.

**RFP Nos. 39 and 40 — Declined Prosecutions and Prosecutor Feedback.** The City "objects to this request because it is overly broad and unduly burdensome" as to RFP No. 39, and as to RFP No. 40 states it "is not aware of any responsive documents regarding any of the individual officers named in this lawsuit." RFP No. 40 asked for communications between the Prosecutor's Office and Troy PD generally — not limited to named officers. The City's unilateral narrowing of a broader request, followed by a "no documents" representation as to the narrowed version, is evasion under *Siser*.

**RFP No. 45 — Officer-to-Officer Communications During the Active Investigation.** The City responded: "Defendant is not in possession, control or custody of any communications between the Defendant Officers" from September 22-25, 2023. This categorical denial covers four days during which five Defendant Officers were simultaneously present at a crash scene, obtaining a blood draw warrant, and conducting a SOCCIT investigation. A blanket "no communications" claim for this window is irreconcilable with the City's own produced records documenting coordination among Troy officers during this period. Under *Warner*, 820 F.Supp.3d at 633, documentation of specific custodians, systems, search terms, and date ranges is required before a "no documents" representation satisfies a party's production obligations. No such documentation has been provided.

**RFP Nos. 46 and 47 — Union Communications and Representation Records.** The City is "not aware of or in possession, control or custody of any communications the Defendant Officers may have had with any union representatives" (RFP No. 46) and "is not aware of or in possession, control or custody of any responsive documents" regarding representation documentation (RFP No. 47). The TPOA Collective Bargaining Agreement produced at Bates 00265-00310 contains detailed provisions governing mandatory union

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

representation during internal investigations — provisions directly triggered by this Incident. A labor agreement establishing mandatory representation procedures cannot credibly coexist with a claim that no representation communications exist for five officers involved in an officer-at-fault collision, a SOCCIT investigation, a criminal prosecution, and active civil litigation.

## VI. PREJUDICE TO PLAINTIFF

The City's discovery failures impose concrete, mounting prejudice on Plaintiff as every week passes without resolution.

Fact discovery closes on August 12, 2026. Plaintiff's expert reports are due on October 12, 2026. Depositions of all five Defendant Officers and the City's 30(b)(6) representative are scheduled for July and August. Plaintiff cannot meaningfully examine the Defendant Officers on the policies and procedures that governed their conduct on September 22, 2023 if those General Orders remain withheld. Plaintiff cannot confront Officer Allan about communications he had with other officers while preparing the warrant affidavit if the City claims no such communications exist and provides no ESI documentation supporting that claim. Plaintiff cannot challenge the integrity of the Axon video production if the City refuses to produce the complete Axon audit trail. Plaintiff cannot question any officer about prior discipline, after-action reviews, or Early Intervention System records if those records are buried behind boilerplate objections that lack any factual support.

Expert reports on liability, police practices, and municipal custom depend on the very materials being withheld. Plaintiff's police practices expert cannot render a fully informed opinion on whether the City's training and supervision of its officers fell below applicable standards without access to the General Orders governing emergency vehicle operations, OWI investigations, and warrant practice, the training records for all five officers, and the collision review findings the City



LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

admits exist but has not produced. Every additional week of non-production narrows the window available to complete depositions, supplement expert analyses, and prepare for trial.

**VII. CONCLUSION**

The City of Troy has responded to Plaintiff's discovery requests with a strategy of delay, evasion, and stonewalling. As the court explained in *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 189 (N.D. Iowa 2017), "the 'natural and probable consequences' of 'boilerplate' objections is delay and impediment of discovery, .... the impropriety of employing such frivolous objections in every single discovery response also demonstrates the parties' obstructionist attitude toward discovery and would further confirm suspicions that the responses were interposed for an improper purpose." That description fits the City's conduct precisely. After receiving a letter identifying every deficiency, the City responded with more than a month of silence.

Federal Rule of Civil Procedure 37(a)(5) requires the Court, upon granting this Motion, to require the City, its counsel, or both to pay Plaintiff's reasonable expenses, including attorney fees. Rule 26(g) independently requires sanctions for any certification violation without substantial justification, as Judge Stafford held in *Siser*, 325 F.R.D. at 208. Pursuant to *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 359 (D. Md. 2008), the very act of asserting the boilerplate objections that permeate the City's responses constitutes prima facie evidence of a Rule 26(g) violation. The City's conduct does not approach substantial justification.

**WHEREFORE**, Plaintiff THOMAS SZCZESNY respectfully requests that this Honorable Court grant the Motion to Compel, enter an Order **[See Exhibit #4, proposed Order]** compelling the City of Troy to serve complete, supplemented, and fully compliant discovery responses within fourteen (14) days from the date of entry of the Order, together with a privilege log and ESI search certification within seven (7) days, and award Plaintiff his reasonable expenses and attorney fees

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006



incurred in bringing this Motion, together with such further relief as the Court deems just.

Respectfully submitted,
**LAW OFFICES OF JASON A. WAECHTER**

*/s/  Aaron R. Martinez*
AARON R. MARTINEZ (P86228)
JASON A. WAECHTER (P47651)
Attorneys for Plaintiff
19080 W. Ten Mile Rd, 2nd Fl
Southfield, MI  48075
(248) 355-4701

Dated: July 1, 2026

**LAW OFFICES OF JASON A. WAECHTER**
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701  •  FACSIMILE 248.281.0006



# EXHIBIT 1

JASON A. WAECHTER
JASON@877POWERLAW.COM

SEAN P. MURPHY
SEAN@877POWERLAW.COM

DAVID J. WINTER
OF COUNSEL:

# LAW OFFICES OF JASON A. WAECHTER

19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701  ●  FACSIMILE 248.281.0006

AARON R. MARTINEZ
AARON@877POWERLAW.COM

STEPHEN F. HARDY
STEPHEN@877POWERLAW.COM

www.themotorcyclelawyer.com
www.877powerlaw.com

---

May 29, 2026

**<u>VIA EMAIL ONLY</u>**
Julie Quinlan Dufrane, Esq.
City of Troy City Attorney's Office
500 W. Big Beaver Road
Troy, Michigan 48084
j.dufrane@troymi.gov

> **Re:**   ***Szczesny v. City of Troy, et al.*, Case No. 2:25-cv-12836-GAD-EAS**
> **City's Responses to Plaintiff's First Discovery Requests**

Dear Ms. Dufrane:

Our office has completed its initial review of the materials produced by the City of Troy in response to our First Set of Discovery Requests. This letter constitutes Plaintiff's formal meet-and-confer request pursuant to Federal Rule of Civil Procedure 37(a)(1) and E.D. Mich. LR 7.1(a). We request that you contact us within seven (7) days to schedule a telephone or video conference.

We have conducted a review of the City's Response to Plaintiff's First Discovery Requests. This letter is intended to provide you with a comprehensive accounting of what we believe is every deficiency to the extent we have identified. These issues will be presented as a combined motion to compel if not substantially resolved at the conference.

Further, to the extent the City claims that it is only producing "preserved" responsive items, we direct your attention to the multiple preservation notices that have been sent to the City on Mr. Szczesny's behalf — including by his prior counsel Christensen Law on October 11, 2023 and this office on March 24, 2026. To the extent that the City continues to qualify its production of documents with "available" or "preserved" designations, the City should identify which responsive records are no longer available or were not preserved.

## GOVERNING LEGAL PRINCIPLES

Before addressing the specific deficiencies, we draw your attention to the following controlling authority from this Court and, specifically, from Magistrate Judge Elizabeth A. Stafford, who is assigned to this matter.

In *Siser North America, Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 202 (E.D. Mich. 2018), Magistrate Judge Stafford wrote: "Discovery is the lifeblood of litigation and, as such, it 'must be initiated and responded to responsibly, in accordance with the letter and spirit of the discovery rules, to achieve a proper purpose (i.e., not to harass, unnecessarily delay, or impose needless expense).'" We believe the City's responses fall short of this standard.

PARALEGALS
CRIS VIVIAN - cris@877powerlaw.com   ●   JULIE TAYLOR - julie@877powerlaw.com   ●   TINA BECKES - tina@877powerlaw.com
MINDY BROWN - mindy@877powerlaw.com   ●   ALEXANDRA BAKER - alex@877powerlaw.com   ●   LESLEY KOZMINSKI - lesley@877powerlaw.com

May 29, 2026
Page 2 of 18

Evasive and incomplete answers are tantamount to no answer. In *Siser*, 325 F.R.D. at 209–10, Judge Stafford held: "Evasive and incomplete answers to discovery requests are tantamount to no answer at all," citing *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 502 (N.D. Ohio 2013), and *Beard v. Hawkins*, No. CV 14-13465, 2016 WL 6787628, at *7 (E.D. Mich. Sept. 13, 2016). Referring Plaintiff to voluminous Bates ranges without explaining what specific subparts are answered, and offering partial productions while claiming completeness, are precisely the evasions this rule condemns.

Privilege requires a log. Federal Rule of Civil Procedure 34(a)(1) requires a party to produce documents and electronically stored information within its "possession, custody, or control." When a party withholds documents otherwise required to be produced under Rule 34(a)(1) by claiming privilege, it must comply with Rule 26(b)(5)(A)(ii), which requires a privilege log enabling other parties to assess the claim. In *Siser*, 325 F.R.D. at 204, Judge Stafford found a Rule 26(g) violation where the defendant "never produced a privilege log" despite the Court's prior order that warned, "[T]o the extent that defendants claim privilege, they must provide a privilege log as described in Fed. R. Civ. P. 26(b)(5)(A)(ii)."

ESI search certification is required. In *Warner v. Gilbarco, Inc.*, 820 F. Supp. 3d 629, 633 (E.D. Mich. 2026), Magistrate Judge Patti — hearing a matter also assigned to Judge Drain — found ESI production obligations satisfied only after defense counsel, as an officer of the Court, documented on the record the specific custodians searched, the date ranges, and the search terms applied, and the Court found that submission "suffices and complies with its prior order." A categorical "no documents" response, without this certification, is insufficient.

The duty to supplement is continuous. In *Trapp v. Federal Express Corp.*, 647 F. Supp. 3d 567, 569 (E.D. Mich. 2022), the Eastern District of Michigan held: "The duty to supplement discovery does not cease upon the close of the applicable discovery period," citing *Everlight Electronics Co. v. Nichia Corp.*, No. 12-CV-11758, 2015 WL 412184, at *1 (E.D. Mich. Jan. 30, 2015). Rule 26(e)(1) creates a continuous obligation to supplement or correct all responses to interrogatories, requests for production, and requests for admission.

Sanctions are mandatory. In *Siser*, 325 F.R.D. at 208, Judge Stafford reiterated that Rule 26(g) "requires a court to impose sanctions for any violation without 'substantial justification,'" citing *Jones v. Illinois Central R. Co.*, 617 F.3d 843, 854 (6th Cir. 2010).

## I. NAMING OF VIDEO FILES

Plaintiff is in receipt of an Axon link containing 63 items, including primarily videos. The file names of videos produced to Plaintiff under this request appear to have been altered from the original native naming format used by the Axon System.

For example: the format should appear like the following video from the officer using the X60A1575M body camera unit:
"Axon_Body_3_Video_2023_09_22_2124_X60A1575M.mp4." This information is provided on each file generated by the Axon system and is essential for ensuring which system was used, the date and time the video began, and the serial number for the unit

May 29, 2026
Page 3 of 18

on which it was recorded.

All file names have been changed to read "PERSONAL INJURY ACCIDENT" with apparent sequential numbering. By changing the names of the files, the City's response frustrates Plaintiff's attempts to identify each and every video and the officers whose camera recorded the scene and creates a substantial burden. We ask for the immediate production of the files with their native naming, and without edits, alterations, or omissions.

## II. PROTECTIVE ORDER — CITY'S FAILURE TO PURSUE

The City has conditioned its production under RFP Nos. 11, 15, and 21 on the execution of a protective order. This condition has become an indefinite excuse for non-production, and it is not a proper basis for continued withholding.

The record establishes that the City bears full responsibility for this delay. At the January 22, 2026 Rule 26(f) conference, the parties agreed that a protective order was needed, and the filed Joint Discovery Plan reflects that Defendant City of Troy's counsel will circulate a template protective order for the parties to review and negotiate. Consistent with that commitment, Plaintiff reviewed the proposed order, provided revisions, and has since made repeated attempts to facilitate its submission to the Court — all without a response from the City on the protective order itself. The City has responded to other communications in this matter, including those pertaining to mediation scheduling and a separate meet-and-confer regarding depositions.

As this Court held in *Peterson v. Corby*, 347 F.R.D. 192, 196 (E.D. Mich. 2024), a party that seeks to withhold documents on confidentiality grounds "should have… moved for a protective order under Rule 26(c)(1), specifying facts showing a clearly defined or serious injury resulting from disclosing the policies." The burden is on the withholding party to file the motion — not on Plaintiff to secure its submission. The City has not filed any such motion despite the passage of months since being served with Plaintiff's requests.

A party cannot claim confidentiality concerns as the basis for withholding documents while simultaneously declining to pursue the very mechanism the rules provide to address those concerns. Delay in production attributable solely to the withholding party's inaction does not constitute "substantial justification" under Rule 26(g).

**Request:** The City must either (1) file a properly supported Rule 26(c)(1) motion for a protective order within seven (7) days of this letter, or (2) produce all materials currently withheld under RFP Nos. 11, 15, and 21 without further condition. The protective order reviewed and revised by Plaintiff is available for immediate submission; there is no legitimate obstacle to filing it.

## III. SPECIFIC RFP DEFICIENCIES

### RFP No. 1 — BWC/ICV/MVR Recordings

This request sought production of "All BWC/ICV/MVR recordings for all involved units (operated by Defendant Officers and Other Officers), including pre/post-event buffers, native originals, activation/deactivation/categorization logs, and any redaction logs."

May 29, 2026
Page 4 of 18

The City responded by providing the aforementioned Axon link with 63 files.

**Deficiencies**: (1) Based on the City's designation of the call Leithauser was responding to at the time of the Incident as an "emergency," Plaintiff asserts that all video from that call — including Officer Lietzow's BWC and ICV footage from CFS 23-28387 — is responsive to this request. These videos do not appear to be included in the production. That event occurred on September 22, 2023, is related to the Incident, is squarely within scope of this request, and is relevant to this action based upon the City's designation that Defendant Leithauser was responding to an "emergency." (2) No activation/deactivation or categorization logs have been produced. (3) No redaction log identifying any muted or redacted video segments has been produced. (4) Pre/post-event buffers for all officers' units have not been confirmed in their native buffer state.

The City's narrowed response is precisely the kind of evasive partial answer that *Siser* holds is "tantamount to no answer at all."

**Request:** Produce the foregoing immediately with the native file names included; if no longer available, provide a clear designation of the unit number, date/time, and officer corresponding to each video produced; confirm whether any video contains muted or redacted segments and identify them.

### RFP No. 2 — CAD/911/Dispatch Materials

This request sought production of "All CAD/911/Dispatch materials including call audio, incident history, unit histories, response/disposition codes, timestamps, and audit logs."

The City responded by producing "preserved" 911 calls and radio traffic, referring to Bates 00126–00128. The production index confirms: 23-28387_radio, 23-28389_phones, and 23-28389_radio were produced. However, 911 calls for CFS 23-28387 were not produced — only the radio file.

**Deficiencies**: (1) 911 call audio for CFS 23-28387 has not been produced. (2) The full CAD D-Card for CFS 23-28387 in native format with complete event history, unit assignment logs, priority classification, dispatcher notes, and timestamps has not been produced — the reference to Bates 00126–00128 in the AHPD report is two pages of summary, not the full CAD record. (3) CAD audit logs have not been produced.

**Request:** Produce 911 call audio for CFS 23-28387; produce the complete CAD event history for both incidents in native format with all fields populated; or confirm such information has not been retained.

### RFP No. 3 — AVL/GPS/Telematics/EDR/MDT Data

This request sought all AVL/GPS/Telematics/EDR/MDT data showing unit speed/location and light/siren status for all involved units (operated by Defendant Officers and Other Officers) from one hour before to one hour after the collision.

The City's response refers to the AHPD report at Bates 00163–00207.

**Deficiencies:** (1) AVL/GPS logs for PV 931 before 21:09 hrs are not in the AHPD report

May 29, 2026
Page 5 of 18

and have not been separately produced. (2) MDT data for all involved officers has not been separately produced. (3) Telematics data showing light/siren status — which the City admitted in RFA COT-10 is maintained through the Axon camera system — has not been produced as a discrete data set.

**Request:** Produce complete AVL/GPS logs for PV 931 from 20:45 through 22:00 hrs on 9/22/23; produce all MDT records for involved units for that period; or confirm such information has not been retained.

### RFP No. 5 — MDT Messages, Chats, Emails, Texts Among Officers

This request sought all MDT messages, chats, emails, and texts among dispatch, supervisors, and officers regarding the Incident.

The City's response refers to Bates 00161 only — a single page.

**Deficiencies**: One page does not answer a request for all MDT messages, emails, and texts. The City's separate response to RFP No. 45 states it has "no communications between the Defendant Officers" — an implausible claim for a four-day window during which a major SOCCIT investigation was ongoing. No ESI search documentation has been provided for this request.

**Request:** Supplement the production with all responsive communications; and provide written certification from counsel as an officer of the Court confirming the specific custodians searched, systems and repositories queried, search terms applied, and date ranges used in connection with this request, as required under *Warner v. Gilbarco, Inc.*, 820 F. Supp. 3d 629, 633 (E.D. Mich. 2026).

### RFP No. 6 — Third-Party Video and Photos

This request sought all third-party video and photos obtained or sought by the City or Auburn Hills PD, with chain-of-custody documentation, including documentation of all third-party sources from which the City or Auburn Hills PD sought surveillance footage.

The City produced Gas Station Video and 11-22 Shell Video via Axon link only.

**Deficiencies**: (1) The Troy PD Case Report documents that Officer Huck retrieved CCTV footage from Henry Ford Health Security Corporal Sayej on approximately September 26, 2023, and turned it over to Sgt. Warzecha. This footage is not on the Axon list at Bates 00641–00647 and is not addressed anywhere in the City's response. It was physically collected by a Troy SOCCIT officer and transferred to the lead investigator — it is within the City's possession and control. The City's failure to even acknowledge this footage in its response is an evasive, incomplete answer that is "tantamount to no answer at all." (2) No chain-of-custody documentation has been produced for any third-party video — including the Gas Station Video and 11-22 Shell Video that were produced. The request specifically sought chain-of-custody documentation as a discrete item, and none has been provided.

**Request:** Produce the Henry Ford Health CCTV footage retrieved by Officer Huck; produce chain-of-custody documentation for all third-party video produced, confirming the

May 29, 2026
Page 6 of 18

identity of the retrieving officer, the date of retrieval, and the source for each item; or if the Henry Ford footage no longer exists, identify who last had custody and explain its disposition.

### RFP No. 7 — Patrol Vehicle 931 Records

This request sought complete records for PV 931 including maintenance history, emergency equipment testing and inspection records, dash camera equipment records, EDR downloads, vehicle assignment records including pre-shift inspection checklists, tow/impound/inspection records, and all purchase, sale, and disposal records (subparts a–g).

The City's response is labeled "RESPONSE TO RFP NO. 8" and refers to Bates 00455–00616.

**Deficiencies:** (1) Pre-shift inspection checklists and emergency equipment testing records are not separately identified in the production. (2) Internal communications authorizing, approving, or discussing the listing, auction, and sale of PV 931 on GovDeals in September 2025 — including any reference to this lawsuit or any litigation hold — are absent. PV 931 appears to have been sold eleven days after this lawsuit was filed. These internal authorization communications are responsive to subpart (g).

**Request:** Clarify which RFP Bates 00455–00616 is intended to answer; produce pre-shift inspection checklists and emergency equipment test records; produce all internal communications authorizing the 2025 sale of PV 931, including any reference to this litigation or any litigation hold; or confirm which of these components no longer exist.

### RFP No. 8 — Complete Search Warrant Packet

This request sought the full search warrant packet including the affidavit/application (all drafts), exhibits, proposed order, signed warrant, return/inventory, and internal/external communications (including with any prosecutor or judge's staff) about the warrant.

The City's response refers to the AHPD Case Report at Bates 00129–00146.

**Deficiencies**: The request specifically sought all drafts and all communications about the warrant's content or omissions. Draft warrant affidavits and communications between Allan and G. Parra, or others, about the warrant's content have not been addressed.

**Request:** Confirm whether any drafts of the warrant affidavit exist and produce them; produce all communications about the warrant content, including those between Allan, G. Parra, and any superior officer, and including any communications with the prosecutor's office or judge's staff; or confirm that no such communications exist.

### RFP No. 9 — Materials Allan Reviewed Before Swearing Affidavit

This request sought all materials Allan reviewed or relied upon before swearing the affidavit, including photos, videos, notes, reports, statements, lab/medical information, and related communications.

May 29, 2026
Page 7 of 18

The City's response refers Plaintiff to Bates 00139–00146.

**Deficiencies:** Allan's own discovery answers confirm he spoke with A. Parra, watched his BWC footage, and consulted G. Parra before swearing the affidavit. Notes made while reviewing that footage and communications between Allan and G. Parra during that review are responsive and have not been produced.

**Request**: Produce all notes, jottings, and communications created by Allan or others in connection with reviewing BWC footage or drafting the warrant; advise if any other requested item is in the City's possession, custody, or control.

### RFP No. 11 — OWI/Warrant/Blood Draw Policies

This request sought Troy PD policies on OWI investigations, warrant practice, bodily-intrusion/blood draws, and preservation of exculpatory evidence — all versions from 9/22/2013 to present.

The City's response states that General Order No. 9 will be produced upon execution of a protective order.

**Deficiencies:** (1) As addressed in Section II above, the City has no legitimate basis to continue conditioning production on a protective order it agreed to circulate and has since refused to advance. As *Peterson* holds, a party with confidentiality concerns "should have, but did not, moved for a protective order under Rule 26(c)(1), specifying facts showing a clearly defined or serious injury resulting from disclosing the policies." 347 F.R.D. at 196. The mechanism for protecting sensitive documents is a properly filed and substantiated motion for a protective order — not a unilateral condition on production that persists indefinitely due solely to the withholding party's inaction. (2) All historical versions of General Order No. 9 since 9/22/2013 have not been addressed.

**Request:** Produce General Order No. 9 and all prior versions from 9/22/2013 to present, consistent with the framework and deadline set forth in Section II above.

### RFP No. 13 — Communications with Prosecutors

This request sought all communications with prosecutors regarding intake/charging, review packets, warrant requests, evidence sufficiency, declines/dismissals, and case closure.

The City objected as overly broad and produced nothing, though the Dufrane/Camaj email at Bates 00452–00454 was produced under a different description in the production index.

**Deficiencies**: Selectively producing some communications while withholding the remainder under a boilerplate overbreadth objection is exactly the conduct *Siser* condemns — "evasive and incomplete answers to discovery requests are tantamount to no answer at all." The City cannot provide one communication with the Prosecutor's Office and simultaneously claim communications with the Prosecutor are too broad to produce.

May 29, 2026
Page 8 of 18

**Request**: Produce the complete charging referral packet submitted to the Oakland County Prosecutor regarding Thomas Szczesny; produce all communications between any Troy PD personnel or the City Attorney's office and the Oakland County Prosecutor specifically regarding Thomas Szczesny from 9/22/23 through 12/31/24.

### RFP No. 15 — All Troy PD Policies

This request sought all policies/SOPs/guidelines enacted by Troy PD and prior versions since 9/22/2013, including those covering emergency vehicle operations, BWC/ICV, OWI/warrants, report writing, IA/EIS, collision review boards, evidence retention, Lexipol/IACP adoption, conflicts of interest, and interoperability agreements.

The City's response states that General Orders No. 5.17, 5.2, 9, 11, 13, 64, and 114 will be produced upon execution of a protective order.

**Deficiencies**: (1) As addressed in Section II above, the City has no legitimate basis to continue withholding these materials on protective order grounds of its own making. As *Peterson* instructs, where a party has legitimate confidentiality concerns, the mechanism is a Rule 26(c)(1) protective order motion supported by specific facts — not unilateral withholding that persists indefinitely. 347 F.R.D. at 196. (2) Whether Lexipol policies, SOPs not designated as General Orders, or IACP model policies exist has not been addressed. (3) Historical versions since 2013 have not been addressed. (4) Conflict-of-interest and nepotism policies (subpart i) have not been addressed. (5) The interoperability agreements partially addressed at Bates 00316–00384 require a confirmation of completeness.

**Request**: Confirm the existence of any additional policy frameworks beyond those identified, including Lexipol, IACP model policies, or SOPs by any other name; address subparts (h) and (i); produce all responsive versions and prior versions since 2013; produce all materials currently withheld, consistent with the framework and deadline set forth in Section II above.

### RFP No. 16 — Training Curricula and Acknowledgment Records

This request sought training curricula, lesson plans, tests, slide decks, sign-in sheets, testing and assessment records, and policy acknowledgment forms for all Defendant Officers for the last ten years.

The City objected and produced "available" training records at Bates 00684–00804.

**Deficiencies**: (1) No training records from the City's systems have been produced for Warzecha — his entry is conspicuously absent from the production index at Bates 00684–00804, which lists records for Allan, Leithauser, A. Parra, and G. Parra only. (2) The request sought lesson plans, tests, slide decks, sign-in sheets, and testing and assessment records — not merely printout summaries. (3) Policy acknowledgment forms — signed records confirming each officer received and understood specific policies — have not been produced.

The "available" qualifier is precisely the kind of evasive partial response that *Siser* holds is tantamount to no answer at all.

May 29, 2026
Page 9 of 18

**Request:** Produce all City training records for Warzecha immediately; identify which responsive records are no longer "available" and the reason for their unavailability; produce policy acknowledgment forms for all five officers for emergency vehicle operations, BWC activation, and warrant practice policies.

### RFP No. 18 — Critical Incident Reviews and After-Action Reports

This request sought Critical Incident Reviews, After-Action Reports, Collision Review Board findings, Pursuit Review Board determinations, and Use of Force Review Board findings for any Troy officer entering dark intersections at speed without lights/siren, any officer-at-fault collision, BWC/ICV activation violations, defective warrant affidavits, OWI investigations later dismissed or declined prosecution, and each Defendant Officer specifically — all for the last ten years.

The City objected as overly broad and produced nothing.

In *Peterson v. Corby*, 347 F.R.D. 192, 196–97 (E.D. Mich. 2024), Judge Stafford compelled disclosure of whether the defendant officer had "been investigated for excessive force, to identify the dates of any investigations and grievances, and to describe the outcomes," and further compelled production of "misconduct reports and any other investigative documents related to the two incidents." The same logic governs here. The City sustained a finding of "Improper Conduct" against Leithauser — yet claims no Collision Review Board findings or After-Action Reports exist? Subpart (f) — each Defendant Officer's individual review history — is directly and narrowly relevant and cannot be objected to as overbroad without factual support. A burdensome objection without affidavits or other evidence to substantiate it is invalid under *Siser* and *Peterson*.

**Request:** Produce all Critical Incident Reviews, Collision Review Board findings, and After-Action Reports for each Defendant Officer; produce all such records for officer-at-fault collisions within Troy PD for the last ten years.

### RFP No. 20 — MOUs and Interoperability Agreements

This request sought all MOUs, interoperability agreements, mutual aid agreements, or protocols between Troy/Troy PD and Auburn Hills PD, SOCCIT, or any other agency, including those governing outside agency investigations of officer-involved incidents.

The City objected and produced Bates 00316–00384.

**Deficiencies:** The City admits at RFA COT-75 and COT-76 that no written SOCCIT policy governs investigations involving member agency officers and no written recusal policy exists. However, a confirmation that the produced ranges contain the complete universe of responsive documents has never been provided.

**Request:** Confirm that Bates 00316–00384 constitutes the complete production for this request and that no additional MOUs, side agreements, or protocols beyond those produced exist.

### RFP No. 21 — SOCCIT Formation Documents and Governance Materials

May 29, 2026
Page 10 of 18

This request sought all SOCCIT formation documents, agreements, and governance materials, including the original formation agreement, all amendments, bylaws and operating procedures, annual reports/budgets/financial documents, meeting minutes, SOCCIT on-scene check sheets used in this investigation, and any guidance addressing conflicts of interest or recusal when a member agency officer is involved.

The City objected and produced Bates 00316–00322 and 00359–00381, withholding Bates 00323–00358 and 00382–00384 pending a protective order.

**Deficiencies**: (1) SOCCIT annual reports, budgets, and financial documents; meeting minutes from SOCCIT governance meetings; and any SOCCIT guidance addressing conflicts of interest are not confirmed within the produced ranges — only the foundational interlocal agreements appear to be present. (2) The SOCCIT on-scene check sheet used in the September 22, 2023 investigation has not been produced. RFA COT-59 admits that Officer Warzecha participated in the on-scene check sheet. The City's own admission confirms this document exists, and it has not been identified in any produced range or cited in any response. (3) The City's continued withholding of Bates 00323–00358 and 00382–00384 on protective order grounds is unjustified for the reasons stated in Section II above.

**Request:** Produce Bates 00323–00358 and 00382–00384 immediately, consistent with the framework and deadline set forth in Section II; confirm whether SOCCIT annual reports, meeting minutes, and financial documents exist and produce them; produce the SOCCIT on-scene check sheet used in the September 22, 2023 investigation, or confirm it no longer exists.

### RFP No. 22 — SOCCIT Decision Communications

This request sought all communications regarding SOCCIT involvement and the decision to continue with Auburn Hills, including internal command communications, the City Attorney's decision-making analysis, Chief-to-Chief communications, and any internal memoranda analyzing conflicts of interest or financial implications of the SOCCIT selection.

The City objected and refers to Bates 00316–00384.

**Deficiencies:** Internal communications from 9/22/23–1/5/24 discussing whether SOCCIT was appropriate; the City Attorney's decision-making analysis; and the Chief-to-Chief written approval referenced in the October 16, 2023 CLEMIS email are not separate documents within the interlocal agreement Bates range. None of the substantive decision communications have been produced. These are direct, non-burdensome requests for specific communications — the *Siser* standard requires specific factual justification for any claim they cannot be produced, not a generalized overbreadth objection.

**Request:** Produce all internal command communications and any City Attorney documentation regarding the decision to use Auburn Hills to conduct the investigation; produce the Chief-to-Chief written approval referenced in the October 16, 2023 CLEMIS email; or confirm that no such communications exist.

May 29, 2026
Page 11 of 18

### RFP No. 23 — Troy–Eftink Communications

This request sought all communications between any Troy PD personnel and Sgt. Eftink from 9/22/23 through the present.

The City objected, stating this information "is more likely in the control, custody or possession of others," and produced nothing.

**Deficiencies**: The City's own documents at Bates 00311–00314 reflect Captain Gobler communicating directly with Sgt. Eftink — specifically sending the recovered PV 931 video via Evidence.com in May 2024. The City cannot simultaneously claim it has no communications with Eftink while its own produced documents confirm those communications exist. Federal Rule of Civil Procedure 34(a)(1) requires production of documents within a party's "possession, custody, or control" — and the City has the practical ability to search its own email servers and MDT records for communications between Troy personnel and Eftink.

**Request**: Produce all communications between any Troy PD personnel and Sgt. Eftink from 9/22/23 through the present, including those referenced at Bates 00311–00314; and provide written certification from counsel as an officer of the Court confirming the specific custodians searched, systems and repositories queried, search terms applied, and date ranges used in connection with this request, as required under *Warner*, 820 F. Supp. 3d at 633.

### RFP No. 24 — IA/OPS Files for Defendant Officers

This request sought IA/OPS files, citizen complaints, use-of-force reviews, collision/pursuit reviews, and discipline records for each Defendant Officer for the last ten years.

The City objected and refers to Bates 00389–00408 (19 pages for five officers over ten years). The production index lists Bates 00389–00498 as "Prior crash information" but separately lists Bates 00409–00437 as the Troy PD Case Report — these ranges overlap.

In *Peterson*, 347 F.R.D. at 196–97, Judge Stafford compelled disclosure of whether an officer "had been investigated for excessive force, to identify the dates of any investigations and grievances, and to describe the outcomes," and ordered production of "misconduct reports and any other investigative documents related to the two incidents." That standard is equally applicable — and far more compelling — in a multiple-defendant civil rights case involving multiple alleged constitutional violations. Nineteen pages covering five officers over a decade is not a credible complete response to this request.

**Request**: Clarify the overlapping Bates ranges; produce the complete IA file for each Defendant Officer including all investigation documentation, findings, and remedial measures.

### RFP No. 25 — IA for BWC/Emergency Operation Violations, All Officers

This request sought IA/disciplinary files and outcomes for any Troy officer who failed to

May 29, 2026
Page 12 of 18

activate BWC/ICV or violated emergency-operation policies in the last ten years.

The City objected and stated "no responsive documents pertaining to the Defendants named in this lawsuit."

**Deficiencies**: Plaintiff's request was not limited to the named Defendants — it sought records for any Troy officer. The City's narrowed response is nonresponsive and evasive to the actual request. The responding party's unilateral decision to limit a broader request to named defendants, without factual or legal justification, is exactly the kind of evasive response *Peterson* and *Siser* hold is tantamount to no answer at all. No ESI search certification has been provided for this request.

**Request**: Respond to the request as asked: produce IA/disciplinary records for any Troy officer who failed to activate BWC/ICV or violated emergency-operation policies in the last ten years, not limited to the named Defendants; and provide written certification from counsel as an officer of the Court confirming the specific custodians searched, systems and repositories queried, search terms applied, and date ranges used in connection with this request, as required under *Warner*, 820 F. Supp. 3d at 633.

### RFP No. 26 — EIS/Early Warning System Records

This request sought complete EIS records including policy, officer histories, system-wide data, and vendor information.

The City responded: "Does not have any documents or information that is responsive to this request."

**Deficiencies**: The TPOA Collective Bargaining Agreement the City produced at Bates 00265–00310 specifically references "Guardian Tracking" as a performance monitoring system, with detailed provisions governing its retention, officer removal requests, and litigation-hold preservation obligations. The City produced a labor contract describing its own performance tracking system while simultaneously claiming no EIS records exist. This is precisely the kind of directly contradicted "no documents" response that *Siser* found to constitute evasion. No ESI search certification has been provided for this response.

**Request**: Produce all Guardian Tracking records for each Defendant Officer; produce all records of any entries deleted or modified after September 22, 2023; confirm that no Guardian Tracking entries were deleted after the first preservation demand of October 2023; and provide written certification from counsel as an officer of the Court confirming the specific custodians searched, systems and repositories queried, search terms applied, and date ranges used in connection with this request, as required under *Warner*, 820 F. Supp. 3d at 633.

### RFP No. 28 — Brady/Giglio and Impeachment Materials

This request sought Brady/Giglio lists or "do-not-call" lists naming any Defendant Officer; communications with prosecutors concerning impeachment or credibility issues for any Defendant Officer; prior sustained findings or admissions relating to dishonesty, untruthfulness, false reporting, evidence handling, or warrant/affidavit defects implicating

May 29, 2026
Page 13 of 18

credibility; and any Henthorn-style reviews or related correspondence.

The City responded: "After a search of known and available records, the undersigned is not aware of any documents or information that is responsive to this request."

**Deficiencies**: This categorical denial — particularly in a §1983 case where the warrant affidavit's truthfulness and the officers' credibility are central issues — cannot rest on a bare assertion that the undersigned is "not aware" of responsive documents. RFA COT-37 through COT-39 reflect that the City specifically denied, after "review of known files," that any Defendant Officer has been the subject of any Brady/Giglio discussion, disclosure, or maintained information — but no documentation of the ESI search underlying that review has been provided. Without certification of the custodians searched, systems queried, and search terms used, this denial is insufficient under *Warner*.

**Request**: Provide written certification from counsel as an officer of the Court confirming the specific custodians searched, systems and repositories queried, search terms applied, and date ranges used in connection with this request, as required under *Warner*, 820 F. Supp. 3d at 633; if any responsive documents exist that were withheld on privilege grounds, identify them on a privilege log.

## RFP No. 30 — Prior Collisions for All Defendant Officers

This request sought records of prior collisions or pursuit incidents involving any Defendant Officer resulting in City review, findings, remedial training, or restrictions.

The City objected and refers to Bates 00255–00264 only — Leithauser's prior collision information.

**Deficiencies**: Bates 00255–00264 covers Leithauser only. The request was for all five Defendant Officers. Warzecha admitted in his interrogatory answer having "a few minor vehicular accidents related to hitting poles or blocks." Those records may be responsive if resulting in City review, and have not been produced.

**Request**: Produce all prior collision and pursuit records for all five Defendant Officers that resulted in City review, findings, remedial training, or restrictions; or confirm that no such records exist for officers other than Leithauser.

## RFP No. 31 — Risk Management Files

This request sought City risk-management files, notices of claim, reserve/evaluation notes, and insurer/TPA communications concerning the Incident.

The City asserted attorney-client and work product privilege and produced nothing, with no privilege log provided.

Federal Rule of Civil Procedure 34(a)(1) requires production of documents within the City's "possession, custody, or control." Where the City withholds responsive documents on privilege grounds, Rule 26(b)(5)(A)(ii) requires a privilege log enabling Plaintiff to assess the claim. In *Siser*, 325 F.R.D. at 204, Judge Stafford found a Rule 26(g) violation

May 29, 2026
Page 14 of 18

where the defendant "never produced a privilege log" despite the Court's prior order specifically requiring one "as described in Fed. R. Civ. P. 26(b)(5)(A)(ii)." Factual portions of risk management files — notices of claim, incident reports to MMRMA, and claim acknowledgments — are not privileged. Bates 00438–00443 is already described in the production index as "Information sent to MMRMA" — demonstrating that some MMRMA communications were produced while others were withheld, without any explanation for the distinction between what was produced and what remains withheld as privileged.

**Request**: Produce a privilege log within seven (7) days identifying each withheld document with date, author, recipient, and specific privilege basis; produce all non-privileged portions, including all notices of claim, incident reports, and claim acknowledgments sent to MMRMA.

### RFP No. 32 — Insurance and Indemnification Materials

This request sought all insurance policies, coverage determinations/communications, MMRMA correspondence, indemnification agreements/ordinances, history of indemnification refusal, excess/umbrella policies, and claims handling materials including tender letters, reservation of rights letters, and any coverage disputes or declination letters.

The City refers to Bates 00244–00254. However, the production index lists Bates 00244–00354 as "MMRMA Coverage documents" — a discrepancy of 100 pages requiring clarification.

**Deficiencies**: (1) RFA COT-88 admits MMRMA coverage excludes "intentional acts" and "grossly negligent conduct" — but specific policy language governing §1983 claims and the conditions triggering that exclusion have not been produced. (2) City ordinances or resolutions requiring officer indemnification, and individual officer indemnification agreements, have not been produced. (3) History of any indemnification refusal (subpart d) has not been addressed. (4) Excess/umbrella policy information (subpart f) has not been addressed. (5) Claims handling materials — specifically tender letters, reservation of rights letters, and any coverage disputes or declination letters (subpart e) — have not been produced or identified, and are not within the scope of any privilege assertion made in the RFP No. 31 response.

**Request**: Clarify the discrepancy between the 10-page range cited in the response and the 110-page range in the production index; produce MMRMA policy provisions governing §1983 claims and the intentional-act exclusion; produce indemnification ordinances or agreements; address RFP No. 32(d) regarding indemnification refusal history; address RFP No. 32(f) regarding excess and umbrella coverage; produce all tender letters, reservation of rights letters, and coverage dispute correspondence under subpart (e), or assert privilege as to each withheld item on a privilege log.

### RFP No. 37 — Litigation Hold Notice

This request sought the litigation hold notice issued in this matter — date, recipients, and systems covered.

May 29, 2026
Page 15 of 18

The City refers to Bates 00035–39 and 00499–00503.

**Deficiencies**: Bates 00035–39 and 00499–00503 are Plaintiff's own preservation demands served on the City — not the City's internal litigation hold notice issued to its own employees. In *Warner*, 820 F. Supp. 3d at 633, the Court confirmed that preservation and completeness obligations were satisfied only after defense counsel gave on-the-record certification in open court. No such certification has been provided here. The City's internal directive to its personnel — its date, recipients, and systems covered — is not privileged.

**Request**: Produce the City's internal litigation hold notice issued to its own employees, including the date issued, all recipients, and the systems covered; if no internal litigation hold was ever issued, confirm that fact in writing.

### RFP No. 38 — ESI Audit Logs and Vendor Communications

This request sought, for all missing or unavailable ESI, Axon/Evidence.com system logs, error reports, diagnostic analyses, and vendor communications about equipment malfunction.

The City refers to Bates 00311–00314 and the Axon recording list at 00641–00647, and objects to the characterization that data is "missing."

**Deficiencies**: (1) The complete Axon Standards audit trail for EVT-00000117 — all access, upload, download, modification, recall, and deletion events from case creation to present — has not been produced. (2) The email from Axon representative Alex Padilla referenced as "included" in the January 19, 2024 Gobler memorandum was not separately produced. (3) Documents at Bates 00258 and 00262 bear April 21, 2026 print dates — meaning the case file was accessed and printed during active litigation — with no metadata for that access produced. In *Warner*, 820 F. Supp. 3d at 633, the Court confirmed that ESI production obligations are satisfied only when the specific search methodology, custodians, and date ranges applied are documented.

**Request**: Produce the complete EVT-00000117 Axon Standards audit log; produce the Alex Padilla email; produce all communications between any Troy PD personnel and Axon Enterprise regarding Axon Hub Serial No. X7046229C.

### RFP Nos. 39 and 40 — Declined Prosecution Decisions and Prosecutor Feedback

RFP No. 39 sought all declined prosecution decisions by the Oakland County Prosecutor's Office involving: (a) arrests made by any Defendant Officer in the last ten years; (b) OWI charges where blood results showed only prescription medication; and (c) cases declined due to probable cause deficiencies in warrant affidavits. RFP No. 40 sought any feedback letters or communications from prosecutors to Troy PD regarding warrant affidavit deficiencies, insufficient probable cause, Brady/Giglio disclosure requirements, or case quality concerns.

RFP No. 39: Objected as overly broad. RFP No. 40: Objected; states not aware of responsive documents "regarding the individual officers named in this lawsuit."

May 29, 2026
Page 16 of 18

**Deficiencies**: No affidavit or factual showing supports the overbreadth objection to RFP No. 39, including subpart (a), which seeks declined prosecution decisions for arrests by any Defendant Officer — a directly targeted and enumerable category. As to RFP No. 40, the request was not limited to the named officers — it asked for any feedback from the Prosecutor's Office to Troy PD generally. Narrowing a request to named defendants without factual or legal justification, and then asserting there is nothing responsive to the narrowed version, is an evasive answer that is "tantamount to no answer at all."

**Request**: Produce responsive records for both requests as stated, including all three subparts of RFP No. 39 and all categories within RFP No. 40 without limitation to named Defendants.

### RFP No. 44 — External Oversight and Accreditation

This request sought DOJ communications (subpart a); state investigations by AG/MCOLES (subpart b); consent decrees (subpart c); external audits including the full MLEAC accreditation file (subpart d); legislative/oversight body reviews (subpart e); and risk management assessments (subpart f).

Subparts (a)–(c), (e), (f): no documents. Subpart (d): Bates 00385–00388.

**Deficiencies** for subpart (d): A one-page MLEAC compliance certification is not the complete accreditation file. As the Eastern District of Michigan held in *Trapp*, 647 F. Supp. 3d at 569, "the duty to supplement discovery does not cease upon the close of the applicable discovery period" — if the City located additional MLEAC inspection reports or compliance documentation after its initial response, it is obligated to produce them. The full inspection reports, compliance documentation for each standard, and multi-year accreditation records have not been produced.

**Request**: Produce the complete MLEAC accreditation file for 2020 through the present, including all inspection reports, submitted standards, compliance documentation, findings, and MLEAC correspondence.

### RFP No. 45 — Officer-to-Officer Communications During the Active Investigation

This request sought all communications between any officers regarding the Incident from September 22–25, 2023, including texts, emails, and messaging app communications about fault, liability, or charging decisions; communications about pursuing OWI charges against Plaintiff; and communications about Defendant Officer Leithauser's speed, lack of lights/siren, or missing video.

The City's response states it "is not in possession, control or custody of any communications between the Defendant Officers."

**Deficiencies**: This categorical denial covers four days of an active SOCCIT investigation during which five Defendant Officers were simultaneously present at a crash scene, obtaining a search warrant, conducting a blood draw, and coordinating with one another and with SOCCIT members from Auburn Hills and Birmingham. A blanket "no communications" claim for this period is implausible on its face and irreconcilable with the City's own produced records. The AHPD Case Report documents coordination among

May 29, 2026
Page 17 of 18

Troy officers during this window, and the City's response to RFP No. 5 — directing Plaintiff to a single page at Bates 00161 — tacitly acknowledges that communications occurred. In *Warner*, 820 F. Supp. 3d at 633, the Court found ESI production obligations satisfied only after defense counsel documented a complete search with specific custodians, date ranges, and search terms. No such certification has been provided here.

**Request**: Supplement the production with all responsive communications; provide written certification from counsel as an officer of the Court confirming the specific custodians searched, systems and repositories queried, search terms applied, and date ranges used in connection with this request, as required under *Warner*, 820 F. Supp. 3d at 633; if the City continues to maintain that no responsive communications exist, provide that certification from a person with knowledge and authority to so attest.

**RFP Nos. 46 and 47 — Union Communications and Representation Documentation**

RFP No. 46 sought all communications between any Defendant Officer and union representatives, union attorneys, TPOA, or POAM regarding the Incident, the IA investigation, the criminal investigation of Plaintiff, and this civil litigation. RFP No. 47 sought documentation of union representation, including notices invoking representation rights, attendance of union representatives at interviews or statements, and union grievances filed related to this Incident.

RFP No. 46: The City states it "is not aware of or in possession, control or custody of any communications the Defendant Officers may have had with any union representatives." RFP No. 47: The City states it "is not aware of or in possession, control or custody of any responsive documents for this request."

**Deficiencies**: These categorical denials are particularly difficult to accept in light of the City's own production. The TPOA Collective Bargaining Agreement produced at Bates 00265–00310 contains detailed provisions specifically governing union representation rights during internal investigations, officer removal requests from Guardian Tracking, and litigation-hold obligations — all of which were potentially triggered in this case. A labor agreement establishing mandatory representation procedures does not coexist credibly with a claim that no representation communications exist for five officers involved in an officer-at-fault collision, a SOCCIT investigation, a criminal prosecution, and active civil litigation. No documentation of the ESI search underlying these denials has been provided. As *Warner* requires, a bare "not aware of" assertion does not satisfy the City's production obligations.

**Request**: Supplement the response with any responsive communications and documentation under both RFP Nos. 46 and 47; and provide written certification from counsel as an officer of the Court confirming the specific custodians searched, systems and repositories queried, search terms applied, and date ranges used in connection with both requests, as required under *Warner*, 820 F. Supp. 3d at 633.

**V. NEXT STEPS**

E.D. Mich. LR 7.1(a) requires a conference held in person, by video, or by telephone. We request a telephone or video conference within seven (7) days.

May 29, 2026
Page 18 of 18

If we cannot reach meaningful resolution at the required conference, we intend to file a combined motion to compel. In *Siser*, 325 F.R.D. at 208, Judge Stafford held that Rule 26(g) "requires a court to impose sanctions for any violation without 'substantial justification.'" We will seek attorney fees under Fed. R. Civ. P. 37(a)(5) and sanctions under Rule 26(g)(3) on all issues requiring court intervention.

As always, we appreciate your consideration and look forward to working through the deposition phase cooperatively. Please contact me at your convenience if you wish to discuss further.

<div align="center">

Very truly yours,
**LAW OFFICES OF JASON A. WAECHTER**

Aaron R. Martinez
Paralegal Cris Vivian: 248-331-9421

</div>

ARM/
Encl.

# EXHIBIT 2

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

**THOMAS SZCZESNY,**

        Plaintiff,

v.

**CITY OF TROY**, a municipal corporation,

**EVAN LEITHAUSER**, in his personal
and professional capacities,

**SCOTT ALLAN** in his personal
and professional capacities,

**ALEJANDRO PARRA**, in his personal
and professional capacities,

**GAIL PARRA**, in her personal
and professional capacities,

and

**BRIAN WARZECHA**, in his personal
and professional capacities,

        Defendants.

Case No: 2:25-cv-12836-GAD-EAS
Hon. Gershwin A. Drain
Mag. Judge: Elizabeth A. Stafford

_____/

| | |
|---|---|
| **Law Offices of Jason A. Waechter**<br>**AARON R. MARTINEZ (P86228)**<br>**JASON A. WAECHTER (P47651)**<br>Attorneys for Plaintiff<br>19080 W. Ten Mile Road<br>Southfield, MI 48075<br>(248) 355-4701 / Fax: 248-281-0006<br>aaron@877powerlaw.com;<br>jason@877powerlaw.com<br>Paralegal Cris Vivian:<br>cris@877powerlaw.com | **Troy City Attorney's Office**<br>**LORI GRIGG BLUHM (P46908)**<br>**JULIE QUINLAN DUFRANE (P59000)**<br>Attorneys for Defendant City of Troy<br>500 W. Big Beaver Road<br>Troy, MI 48084<br>(248) 524-3320<br>bluhmlg@troymi.gov;<br>j.dufrane@troymi.gov |

1

**Rosati Schultz Joppich & Amtsbuechler PC**
**MARGARET T. DEBLER (P43905)**
**AMANDA P. WASKE (P81128)**
Attorneys for Defendant Officers
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331
(248) 489-4100
mdebler@rsjalaw.com;
awaske@rsjalaw.com

_____/

## DEFENDANT CITY OF TROY'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST DISCOVERY REQUESTS TO DEFENDANT CITY OF TROY

Defendant City of Troy responds in part and objects in part to the following First Discovery Requests to Defendant City of Troy:

### GENERAL OBJECTIONS AND RESERVATION OF RIGHTS

1.      Defendant objects to Plaintiff's Discovery Requests to the extent they deviate from or purport to impose requirements other than or in addition to those required by the Federal Rules of Civil Procedure, the Local Civil Rules of the Eastern District of Michigan, and/or the orders of this Court.

2.      Defendant objects to Plaintiff's Discovery Requests to the extent they seek information or documents outside the scope of discovery permissible under the Federal Rules of Civil Procedure.

3.      Defendant objects to Plaintiff's Discovery Requests to the extent these requests seek information that is protected from disclosure

2

by the attorney-client privilege, the attorney work product doctrine or any other recognized privilege.

4.      Defendant objects to Plaintiff's Discovery Requests to the extent that these requests seek information or documents that are beyond Defendant's custody, possession, or control and/or seek information that is equally available to Plaintiff.

5.      Defendant objects to Plaintiff's Discovery Requests because they contain undefined terms which make them vague, ambiguous, overbroad, unduly burdensome, and oppressive.

6.      Defendant expressly limits its responses to Plaintiff's Discovery Requests to the information or documents that can be located after a reasonable and diligent search, within the short period allowed, of its records believed most likely to contain the responsive information.

7.      Defendant's investigation into the facts alleged in Plaintiff's Complaint is ongoing, and representatives of the City of Troy continue to search for information or documents responsive to Plaintiff's Discovery Requests. As additional information or documents become available, Defendant reserves the right to amend, modify, clarify and/or

supplement its responses and objections as appropriate.

8.      Defendant's decision to provide information and/or documents notwithstanding the objectionable nature of Plaintiff's Discovery Requests is not to be construed as an admission that the information or document is relevant, as a waiver of the general or specific objections, or as an agreement that future requests for similar discovery will be treated in a similar manner.

9.      Defendant objects to the Requests to the extent they seek legal conclusions and/or would require Defendant to reach a legal conclusion in order to prepare a response.

10.      Defendant objects to the Requests to the extent they are argumentative, prejudicial, improper, incorrect, vague, and/or ambiguous.

11.      These General Objections and Limitations apply to each of Plaintiff's Discovery Requests as though restated in full in response thereto. To the extent Defendant asserts objections to individual requests, those objections shall apply equally to any subparts of the request.

4

## CITY OF TROY'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSION TO CITY OF TROY

Policies/Practices & Data

**RFA COT-1**: Admit that on September 22, 2023, Troy PD policy required activation of emergency lights and siren when exceeding the posted speed limit.
**RESPONSE TO RFA COT-1**: Denied as drafted.

**RFA COT-2**: Admit that on September 22, 2023, Troy PD policy required activation of emergency lights and siren when entering controlled intersections at speed.
**RESPONSE TO RFA COT-2**: Denied as drafted.

**RFA COT-3**: Admit that patrol vehicle #931 entered an intersection lacking illuminated street lights at a speed exceeding the posted limit.
**RESPONSE RFA COT-3**: Defendant objects to the form of the request and questions the relevance of the undefined phrase "entered an intersection," and the undefined term "intersection." The incident did not occur at an intersection, as that term is generally understood. Defendant is unable to admit or deny the request in the format stated.

**RFA COT-4**: Admit that patrol vehicle #931's emergency lights were not activated at the time of the collision with Mr. Szczesny's motorcycle.
**RESPONSE TO RFA COT-4**: Based on information available to the undersigned, admitted.

**RFA COT-5**: Admit that patrol vehicle #931's siren was not activated at the time of the collision with Mr. Szczesny's motorcycle.
**RESPONSE TO RFA COT-5**: Based on information available to the undersigned, admitted.

**RFA COT-6**: Admit that Troy PD policy required BWC activation during the Incident
**RESPONSE TO RFA COT-6**: Based on the overbroad definition of "Incident" provided in Plaintiff's accompanying Definitions, denied as drafted.

5

**RFA COT-7**: Admit that Troy PD policy required ICV activation during the Incident.
**RESPONSE TO RFA COT-7**: Based on the overbroad definition of "Incident" provided in Plaintiff's accompanying Definitions, denied as drafted.

**RFA COT-8**: Admit that the City maintains AVL/Telematics/MDT or other data capable of showing unit speed for the Incident timeframe.
**RESPONSE TO RFA COT-8**: Admitted as drafted.

**RFA COT-9**: Admit that the City maintains AVL/Telematics/MDT or other data capable of showing unit location for the Incident timeframe.
**RESPONSE TO RFA COT-9**: Admitted as drafted.

**RFA COT-10**: Admit that the City maintains AVL/Telematics/MDT or other data capable of showing light/siren status for the Incident timeframe.
**RESPONSE TO RFA COT-10**: Denied as drafted. Upon information and belief of the undersigned, such information is maintained and/or stored through AXON's camera system.

**RFA COT-11**: Admit that one or more required BWC recordings for the Incident are missing or incomplete.
**RESPONSE TO RFA COT-11**: Defendant objects to the form of the request to the extent that the undefined terms "required," "missing" and "incomplete" are capable of more than one interpretation. Defendant is unable to admit or deny this request in the form stated.

**RFA COT-12**: Admit that one or more required ICV recordings for the Incident are missing or incomplete.
**RESPONSE TO RFA COT-12**: Defendant objects to the form of the request to the extent that the undefined terms "required," "missing" and "incomplete" are capable of more than one interpretation. Defendant is unable to admit or deny this request in the form stated.

**RFA COT-13**: Admit that City policy required preservation of potentially exculpatory evidence in OWI investigations.
**RESPONSE TO RFA COT-13**: Admitted as drafted.

6

**RFA COT-14**: Admit that it is the City's understanding that Defendant Officer Scott Allan did not personally observe Plaintiff operating a vehicle before swearing the search warrant affidavit.
**RESPONSE TO RFA COT-14**: Upon information available and the present belief of the undersigned, admitted as drafted.

**RFA COT-15**: Admit that it is the City's understanding that Defendant Officer Scott Allan did not have personal contact with Plaintiff before swearing the search warrant affidavit.
**RESPONSE TO RFA COT-15**: Upon information available and the present belief of the undersigned, admitted as drafted.

**RFA COT-16**: Admit that it is the City's understanding that Defendant Officer Scott Allan did not communicate with Plaintiff's girlfriend before swearing the search warrant affidavit.
**RESPONSE TO RFA COT-16**: Upon information available and the present belief of the undersigned, admitted as drafted.

**RFA COT-17**: Admit that the subject search warrant affidavit omitted that Plaintiff had been administered hydromorphone prior to the blood draw.
**RESPONSE TO RFA COT-17**: Defendant is unable to admit or deny the request in the form as stated. The undersigned has no personal knowledge of when hydromorphone was administered to Plaintiff. Defendant avers that the lab results for Plaintiff reflect the presence of hydromorphone in his blood.

**RFA COT-18**: Admit that the subject search warrant affidavit omitted that Plaintiff had been administered fentanyl prior to the blood draw.
**RESPONSE TO RFA COT-18**: Defendant is unable to admit or deny the request in the form as stated. The undersigned has no personal knowledge of when fentanyl was administered to Plaintiff. Defendant avers that the lab results for Plaintiff reflect the presence of fentanyl in his blood.

**RFA COT-19**: Admit that the criminal charge against Plaintiff arising from the Incident was dismissed by entry of Nolle Prosequi on December 5, 2024.
**RESPONSE TO RFA COT-19**: Defendant admits that the Nolle Prosequi and/or the court record speaks for itself.

7

**RFA COT-20**: Admit that the dismissal was entered "in the interest of justice."

**RESPONSE TO RFA COT-20**: Defendant admits that the Nolle Prosequi and/or the court record speaks for itself.

**RFA COT-21**: Admit that the City's policies require truthfulness in warrant affidavits.

**RESPONSE TO RFA COT-21**: Admitted as drafted.

**RFA COT-22**: Admit that the City's policies require completeness in warrant affidavits.

**RESPONSE TO RFA COT-22**: Defendant objects to the use of the undefined and subjective term "completeness." Defendant is unable to admit or deny the request in the format stated.

**RFA COT-23**: Admit that omissions regarding medication/sedation prior to a blood draw are material to probable cause for OWI.

**RESPONSE TO RFA COT-23**: Defendant is unable to admit or deny the request in the format as stated.  Defendant avers that officers present facts in a search warrant as they are known to them at the time and a Magistrate or Judge determines if there is probable cause.

**RFA COT-24**: Admit that prior to the Incident, the City had received IA complaints concerning emergency-vehicle operations.

**RESPONSE TO RFA COT-24**: Defendant objects to the overbroad nature of this request and to the form of the request, specifically, the use of the phrase "had received IA Complaints." IA Complaints regarding "emergency-vehicle operations" are not "received" as that term is commonly used.

**RFA COT-25**: Admit that prior to the Incident, the City had received IA complaints concerning failure to activate BWC/ICV.

**RESPONSE TO RFA COT-25**: Defendant objects to the overbroad nature of this request and to the form of the request, specifically the use of the phrase "had received IA Complaints." IA Complaints are not "received" as that term is commonly used.

8

**RFA COT-26**: Admit that prior to the Incident, the City had received IA complaints concerning defective warrant affidavits.
**RESPONSE TO RFA COT-26**: Defendant objects to the overbroad nature of this request and to the form of the request, specifically the use of the phrase "had received IA Complaints." IA Complaints are not "received" as that term is commonly used.

**RFA COT-27**: Admit that the City did not impose discipline on Defendant Officer Evan Leithauser for the Incident.
**RESPONSE TO RFA COT-27**: Admitted as drafted.

**RFA COT-28**: Admit that the City did not impose discipline on Defendant Officer Scott Allan for the search warrant affidavit relating to Plaintiff.
**RESPONSE TO RFA COT-28**: Admitted as drafted.

**RFA COT-29**: Admit that prior to the Incident, the City did not provide annual in-service training addressing intersection entry at speed.
**RESPONSE TO RFA COT-29**: Denied as drafted; Troy Police Officers are expected to know and follow Troy Police General Orders regarding vehicle operations at all times.

**RFA COT-30**: Admit that prior to the Incident, the City did not provide annual in-service training addressing lights/siren usage standards.
**RESPONSE TO RFA COT-30**: Denied as drafted; Troy Police Officers are expected to know and follow Troy Police General Orders regarding vehicle operations at all times.

**RFA COT-31**: Admit that prior to the Incident, the City did not provide annual in-service training addressing warrant-affidavit truthfulness and materiality.
**RESPONSE TO RFA COT-31**: Denied as drafted; Troy Police Officers are expected to know and follow Troy Police General Orders regarding search warrants.

**RFA COT-32**: Admit that the City owned patrol vehicle #931 on September 22, 2023.
**RESPONSE TO RFA COT-32**: Admitted as drafted.

9

**RFA COT-33**: Admit that Defendant Officer Evan Leithauser was acting in the course and scope of his employment when operating patrol vehicle #931 on September 22, 2023.
**RESPONSE TO RFA COT-33**: Based on the information available, Defendant admits that Officer Leithauser was acting within the course and scope of his employment.

**RFA COT-34**: Admit that the VIN of the patrol vehicle operated by Defendant Officer Evan Leithauser on September 22, 2023 was 2C3CDXKT7JH319480.
**RESPONSE TO RFA COT-34**: Admitted as drafted.

**RFA COT-35**: Admit that, prior to the Incident, the City lacked a policy mandating remedial training after an officer-at-fault collision.
**RESPONSE TO RFA COT-35**: Defendant Troy admits that remedial training, if any, may be part of progressive discipline and is determined on a case-by-case basis.

**RFA COT-36**: Admit that, prior to the Incident, the City lacked a policy mandating temporary driving restrictions after an officer-at-fault collision.
**RESPONSE TO RFA COT-36**: Defendant Troy admits that temporary driving restrictions, if imposed, may be part of progressive discipline and is determined on a case-by-case basis.

**RFA COT-37**: Admit that at least one Defendant Officer has been the subject of *Brady/Giglio*- related discussion with a prosecutor.
**RESPONSE TO RFA COT-37**: Upon information available, review of known files regarding this request, and the present belief of the undersigned, denied as drafted.

**RFA COT-38**: Admit that at least one Defendant Officer has been the subject of *Brady/Giglio* disclosure to a prosecutor.
**RESPONSE TO RFA COT-38**: Upon information available, review of known files regarding this request, and the present belief of the undersigned, denied as drafted.

10

**RFA COT-39**: Admit that the City maintains *Brady/Giglio* information regarding at least one Defendant Officer.
**RESPONSE TO RFA COT-39**: Upon information available, review of known files regarding this request, and the present belief of the undersigned, denied as drafted.

**RFA COT-40**: Admit that such *Brady/Giglio* information was not disclosed to Plaintiff prior to suit.
**RESPONSE TO RFA COT-40**: Defendant objects to the form of the request because it assumes facts.  Upon information available, review of known files regarding this request, and the present belief of the undersigned, denied as drafted.

**RFA COT-41**: Admit that the City of Troy is a founding member agency of the Southeast Oakland County Crash Investigation Team (SOCCIT).
**RESPONSE TO RFA COT-41**: Admitted as drafted.

**RFA COT-42**: Admit that Auburn Hills Police Department is a member agency of SOCCIT.
**RESPONSE TO RFA COT-42**: Admitted as drafted.

**RFA COT-43**: Admit that Birmingham Police Department is a member agency of SOCCIT.
**RESPONSE TO RFA COT-43**: Admitted as drafted.

**RFA COT-44**: Admit that Bloomfield Township Police Department is a member agency of SOCCIT.
**RESPONSE TO RFA COT-44**: Admitted as drafted.

**RFA COT-45**: Admit that Bloomfield Hills Department of Public Safety is a member agency of SOCCIT.
**RESPONSE TO RFA COT-45**: Admitted as drafted.

**RFA COT-46**: Admit that Clawson Police Department is a member agency of SOCCIT.
**RESPONSE TO RFA COT-46**: Admitted as drafted.

11

**RFA COT-47**: Admit that SOCCIT was created to investigate traffic crashes involving civilians in member jurisdictions.
**RESPONSE TO RFA COT-47**: Admitted as drafted.

**RFA COT-48**: Admit that SOCCIT's stated objectives include reduction of overtime costs through cost-sharing among member agencies.
**RESPONSE TO RFA COT-48**: Admitted as drafted.

**RFA COT-49**: Admit that SOCCIT member agencies jointly purchase and share crash investigation equipment.
**RESPONSE TO RFA COT-49**: Admitted as drafted.

**RFA COT-50**: Admit that SOCCIT member agencies jointly train together on crash investigation techniques.
**RESPONSE TO RFA COT-50**: Admitted as drafted.

**RFA COT-51**: Admit that SOCCIT member agencies use "peer review" of crash investigations conducted by other member agencies.
**RESPONSE TO RFA COT-51**: The undersigned is unable to admit or deny the request because it is unclear about the reference to the phrase "peer review of crash investigations."

**RFA COT-52**: Admit that Troy PD and Auburn Hills PD share access to the Oakland County CLEMIS CAD/dispatch system.
**RESPONSE TO RFA COT-52**: Admitted as drafted.

**RFA COT-53**: Admit that on September 22, 2023, Defendant Officer Brian Warzecha initiated a SOCCIT call-out to investigate the collision involving Defendant Officer Leithauser.
**RESPONSE TO RFA COT-53**: Admitted as drafted based on the understanding of the information available to the undersigned.

**RFA COT-54**: Admit that Troy SOCCIT members who responded included Defendant Officers Warzecha, Allan, Gail Parra, and Other Officers Huck and Hunter.
**RESPONSE TO RFA COT-54**: Admitted as drafted.

12

**RFA COT-55**: Admit that Auburn Hills SOCCIT member Officer Christopher Saikalis participated in the initial investigation on September 22, 2023.
**RESPONSE TO RFA COT-55**: Admitted as drafted based on the understanding of the information available to the undersigned.

**RFA COT-56**: Admit that Birmingham SOCCIT member Sergeant Jordan Zale participated in the initial investigation on September 22, 2023.
**RESPONSE TO RFA COT-56**: Admitted as drafted based on the understanding of the information available to the undersigned.

**RFA COT-57**: Admit that Sergeant Zale (Birmingham SOCCIT) took photographs and completed a scene sketch.
**RESPONSE TO RFA COT-57**: Admitted as drafted based on the understanding of the information available to the undersigned.

**RFA COT-58**: Admit that Officer Saikalis (Auburn Hills SOCCIT) conducted forensic mapping at the scene.
**RESPONSE TO RFA COT-58**: Defendant is unsure about the authorship of the forensic mapping because in addition to the referenced Officer Saikalis, the map itself also appears to contain the name "B. Dugger." The best source of information for this request is Officer Saikalis himself.

**RFA COT-59**: Admit that Defendant Officer Warzecha oversaw task completion via the SOCCIT on-scene check sheet.
**RESPONSE TO RFA COT-59**: Defendant objects to this request because the use of the term "oversaw" is vague. Defendant admits that it appears Officer Warzecha participated in the on-scene check sheet, but avers that Officer Warzecha is the best source of information as to the response for this request.

**RFA COT-60**: Admit that from September 22, 2023 through January 9, 2024, the investigation into the subject Incident was conducted in whole or in part by Troy PD.
**RESPONSE TO RFA COT-60**: Denied as drafted.

**RFA COT-61**: Admit that even after January 5, 2024, the investigation continued to be a SOCCIT investigation.
**RESPONSE TO RFA COT-61**: Denied as drafted. Auburn Hills PD led the

13

investigation.

**RFA COT-62**: Admit that Sergeant Bryan Eftink of Auburn Hills PD (who took over as lead investigator) is a SOCCIT member.
**RESPONSE TO RFA COT-62**: Admitted as drafted.

**RFA COT-63**: Admit that the City is aware that Sergeant Eftink identifies himself in search warrant affidavits as having "in-service training with the South Oakland County Crash Investigation Team."
**RESPONSE TO RFA COT-63**: Defendant avers that the search warrants authored by Sergeant Eftink speak for themselves.

**RFA COT-64**: Admit that after January 9, 2024, Troy SOCCIT members continued to have access to SOCCIT communications, reports, and findings regarding the investigation.
**RESPONSE TO RFA COT-64**: Denied as drafted based on information available to the undersigned.

**RFA COT-65**: Admit that the October 16, 2023 CLEMIS email from Auburn Hills Chief Ryan Gagnon required "Chief to Chief" written approval "from both sides" before Auburn Hills could access CLEMIS information from Troy.
**RESPONSE TO RFA COT-65**: Defendant objects to the inadmissible hearsay evidence and avers that that the email speaks for itself; Defendant denies that written approval was required.

**RFA COT-66**: Admit that such "Chief to Chief" approval requirement demonstrates a collaborative relationship between Troy and Auburn Hills, not an oversight relationship.
**RESPONSE TO RFA COT-66**: Defendant objects to the argumentative nature of this request. Defendant denies the implication of this request that the subject investigation was not done independently by Auburn Hills Police Department.

**RFA COT-67**: Admit that the City had the option to request that Michigan State Police conduct an independent investigation of the officer-involved collision.
**RESPONSE TO RFA COT-67**: Admitted as drafted.

14

**RFA COT-68**: Admit that the City had the option to request that the Oakland County Sheriff's Office conduct an independent investigation of the officer-involved collision.
**RESPONSE TO RFA COT-68**: Admitted as drafted.

**RFA COT-69**: Admit that neither Michigan State Police nor Oakland County Sheriff's Office is a member agency of SOCCIT.
**RESPONSE TO RFA COT-69**: Admitted as drafted.

**RFA COT-70**: Admit that neither Michigan State Police nor Oakland County Sheriff's Office has cost-sharing or financial relationships with Troy PD through SOCCIT.
**RESPONSE TO RFA COT-70**: Admitted as drafted.

**RFA COT-71**: Admit that neither Michigan State Police nor Oakland County Sheriff's Office participates in "peer review" of Troy PD crash investigations.
**RESPONSE TO RFA COT-71**: Defendant objects to the form of the request. Defendant is unable to respond to this request because it is unclear what is meant by "participates in 'peer review' of Troy PD crash investigations."

**RFA COT-72**: Admit that the decision to use Auburn Hills PD (a SOCCIT member agency) rather than Michigan State Police or Oakland County Sheriff's Office was discretionary, and not mandated by policy.
**RESPONSE TO RFA COT-72**: Admitted as drafted.

**RFA COT-73**: Admit that Troy PD did not request Michigan State Police to investigate the officer-involved collision.
**RESPONSE TO RFA COT-73**: Admitted as drafted.

**RFA COT-74**: Admit that Troy PD did not request Oakland County Sheriff's Office to investigate the officer-involved collision.
**RESPONSE TO RFA COT-74**: Admitted as drafted.

**RFA COT-75**: Admit that SOCCIT has no written policy governing investigations when a SOCCIT member agency officer is involved in a collision.
**RESPONSE TO RFA COT-75**: Admitted as drafted.

**RFA COT-76**: Admit that SOCCIT has no written policy requiring recusal of member agencies when investigating other member agencies.
**RESPONSE TO RFA COT-76**: Admitted as drafted.

**RFA COT-77**: Admit that having a SOCCIT member agency (Auburn Hills) investigate a collision involving another SOCCIT member agency officer (Troy) creates an appearance of conflict of interest.
**RESPONSE TO RFA COT-77**: Defendant objects to this request because it calls for a legal conclusion.

**RFA COT-78**: Admit that having a SOCCIT member agency (Auburn Hills) investigate a collision involving another SOCCIT member agency officer (Troy) creates an actual conflict of interest.
**RESPONSE TO RFA COT-78**: Defendant objects to this request because it calls for a legal conclusion.

**RFA COT-79**: Admit that the collision occurred on September 22, 2023.
**RESPONSE TO RFA COT-79**: Admitted as drafted.

**RFA COT-80**: Admit that the Troy City Attorney was not contacted about how to proceed until January 5, 2024.
**RESPONSE TO RFA COT-80**: Denied as drafted.

**RFA COT-81**: Admit that 105 days elapsed between the collision and the decision to have Auburn Hills "continue" the investigation.
**RESPONSE TO RFA COT-81**: Denied as drafted.

**RFA COT-82**: Admit that during those 105 days, SOCCIT (including Troy members) conducted the investigation.
**RESPONSE TO RFA COT-82**: Denied as drafted.

**RFA COT-83**: Admit that Troy PD obtained the EDR data showing Defendant Officer Leithauser's excessive speed on September 25, 2023.
**RESPONSE TO RFA COT-83**: Defendant objects to the undefined and subjective term "excessive," however, Defendant admits that speed data was downloaded and made part of the investigation.

**RFA COT-84**: Admit that Troy PD had the toxicology results showing no alcohol in Plaintiff's blood before January 5, 2024.

16

**RESPONSE TO RFA COT-84**: Admitted as drafted.

**RFA COT-85**: Admit that despite having exculpatory evidence (no alcohol, officer's excessive speed), Troy waited 105 days to involve the City Attorney in deciding how to proceed.
**RESPONSE TO RFA COT-85**: Denied as drafted.

**RFA COT-86**: Admit that the City is obligated to pay any judgment for attorney fees under 42 U.S.C. § 1988 if Plaintiff prevails in this action.
**RESPONSE TO RFA COT-86**: Defendant objects to this request because it calls for a legal conclusion.

**RFA COT-87**: Admit that Michigan Municipal Risk Management Authority (MMRMA) provides liability insurance coverage for §1983 claims against the City.
**RESPONSE TO RFA COT-87**: Admitted as drafted.

**RFA COT-88**: Admit that Michigan Municipal Risk Management Authority (MMRMA) provides liability insurance coverage for §1983 claims against Troy PD officers.
**RESPONSE TO RFA COT-88**: Admitted as drafted with the exception that coverage is excluded for intentional acts and may be excluded for those acts determined to be conduct that is grossly negligent.

**RFA COT-89**: Admit that MMRMA coverage includes payment of attorney fees awarded under 42 U.S.C. § 1988.
**RESPONSE TO RFA COT-89**: Admitted as drafted.

**RFA COT-90**: Admit that the City has agreed to indemnify Defendant Officer Evan Leithauser for any judgment or settlement arising from this litigation.
**RESPONSE TO RFA COT-90**: Admitted as drafted with the exception that any determination of an intentional bad act or grossly negligent conduct could be excluded from coverage.

**RFA COT-91**: Admit that the City has agreed to indemnify Defendant Officer Scott Allan for any judgment or settlement arising from this litigation.
**RESPONSE TO RFA COT-91**: Admitted as drafted with the exception that any determination of an intentional bad act or grossly negligent conduct could be excluded from coverage.

17

**RFA COT-92**: Admit that the City has agreed to indemnify Defendant Officer Alejandro Parra for any judgment or settlement arising from this litigation.

**RESPONSE TO RFA COT-92**: Admitted as drafted with the exception that any determination of an intentional bad act or grossly negligent conduct could be excluded from coverage.

**RFA COT-93**: Admit that the City has agreed to indemnify Defendant Officer Gail Parra for any judgment or settlement arising from this litigation.

**RESPONSE TO RFA COT-93**: Admitted as drafted with the exception that any determination of an intentional bad act or grossly negligent conduct could be excluded from coverage.

**RFA COT-94**: Admit that the City has agreed to indemnify Defendant Officer Brian Warzecha for any judgment or settlement arising from this litigation.

**RESPONSE TO RFA COT-94**: Admitted as drafted with the exception that any determination of an intentional bad act or grossly negligent conduct could be excluded from coverage.

**RFA COT-95**: Admit that the City has paid attorney fees in prior §1983 cases against Troy PD officers.

**RESPONSE TO RFA COT-95**: Defendant objects to this request because it is not relevant, and it is unlikely to lead to discoverable information pertinent to this case. To the extent an admission or denial is required and without waiving the objection, denied as drafted.

**RFA COT-96**: Admit that the City became aware that Defendant Officer Leithauser made false statements about his speed at the time of the collision.

**RESPONSE TO RFA COT-96**: Defendant objects to this request because it assumes facts that are not available in the information provided to the undersigned. To the extent that a response to this request can be formed, the undersigned denies that the City of Troy "became aware" of false statements allegedly made by Officer Leithauser.

**RFA COT-97**: Admit that the City did not discipline Defendant Officer Leithauser for making false statements about his speed.

**RESPONSE TO RFA COT-97**: Defendant objects to this request because it assumes facts that have not been established concerning any allegedly false statements made by Officer Leithauser.

## DEFENDANT TROY'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANT CITY

**RFP NO. 1**: All BWC/ICV/MVR recordings for all involved units (operated by Defendant Officers and Other Officers), including pre/post-event buffers, native originals, activation/deactivation/categorization logs, and any redaction logs.

**OBJECTION AND RESPONSE TO RFP NO. 1**: Defendant objects to the request for production of "All BWC/ICV/MVR recordings for all involved units" because it is overly broad in scope and not narrowly tailored to lead to relevant discoverable information that is not already in possession of Plaintiff's counsel through other means. In the interest of fairness and without waiving the stated objection, Defendant will produce the available BWC and ICV recordings applicable to the events that occurred on September 22, 2023. Defendant's attorney is able to provide a link to the subject videos through the AXON Evidence system or the available videos can be reproduced on a USB and/or external hard drive.

**RFP NO. 2**: All CAD/911/Dispatch materials: call audio, incident history, unit histories, response/disposition codes, timestamps, and audit logs for the Incident.

**OBJECTION AND RESPONSE TO RFP NO. 2**: Defendant objects to the request for production of "All [materials] for the Incident" because it is overly broad in scope. The broad definition of Incident as defined in Plaintiff's provided Instructions renders production of the materials requested overly burdensome.   In the interest of fairness and without waiving the stated objection, Defendant will produce the preserved 911 calls and radio traffic that is available in the same manner as identified in RFP No. 1 above. See also Bates stamped page number 00126-00128.

19

**RFP NO. 3**: All AVL/GPS/Telematics/EDR/MDT data showing unit speed/location and light/siren status for all involved units (operated by Defendant Officers and Other Officers) from one hour before to one hour after the collision.

**OBJECTION AND RESPONSE TO RFP NO. 3**: Defendant objects to the request for production of "All AVL/GPS/Telematics/EDR/MDT data showing unit speed/location and light/siren status for all involved units (operated by Defendant Officers and Other Officers) from one hour before to one hour after the collision." This request is overly broad and unduly burdensome as it concerns police units and personnel who were not involved in the events that are the subject of this lawsuit. Upon information and belief, the information requested is included in Auburn Hills Case Report NO. 23-0018832 and Bates Stamp page numbers 00163-00207.

**RFP NO. 4**: Complete incident/offense/traffic crash reports, supplements, diagrams, scene photos (original resolution, EXIF), measurements, and any reconstruction or after-action analysis.

**RESPONSE TO RFP NO. 4**: Upon information and belief, the responsive information in the custody, control or possession of the City of Troy is included in Auburn Hills Case Report NO. 23-0018832, Bates stamped page numbers 001-00236 which is attached.

**RFP NO. 5**: All MDT messages/chats/emails/texts among dispatch, supervisors, Defendant Officers, and Other Officers regarding the Incident.

**RESPONSE TO RFP NO. 5**: Upon information and belief, the responsive information in the possession, control or custody of the City of Troy is included in Auburn Hills Case Report NO. 23-0018832 and Bates stamped page number 00161 which is attached.

**RFP NO. 6**: All third-party video/photos obtained or sought (civilian, business, traffic cameras) with chain-of-custody and requests/subpoenas, including documentation of all third-party sources from which the City or Auburn Hills PD sought surveillance footage.

**RESPONSE TO RFP NO. 6**: Responsive information that is in the custody, control or possession of the City of Troy will be provided either with a link through AXON or on an external device. This includes files named: Gas Station Video, beginning at marker 2023-09-22 Friday 21:10:0 and 11-22 Shell Video.

20

**RFP NO. 7**: All records relating to patrol vehicle #931 (VIN: 2C3CDXKT7JH319480), including:

a)      Complete maintenance history from January 1, 2020 through present (service records, work orders, invoices, inspection reports, safety checks, reported defects or malfunctions; estimates/quotes/orders for repairs);

b)      Emergency equipment testing and inspection records (light bar testing, siren testing, automatic activation system testing, repair orders for malfunctioning lights or siren);

c)      Dash camera equipment records (installation, maintenance, repair history, replacement records, malfunction reports, service calls);

d)      Event Data Recorder (EDR) downloads (all downloads performed, subsequent data pulls, interpretation/analysis, GPS/telematics data showing speed, braking, acceleration);

e)      Vehicle assignment records (assignment dates to Defendant Officer Evan Leithauser, pre-shift inspection checklists, prior collision/damage history, whether take-home or pool vehicle);

f)      Tow/impound/inspection records for patrol vehicle #931;

g)      Any and all purchase, sale, or disposal records for patrol vehicle #931;

**RESPONSE TO RFP NO. 8**: Available information is produced at Bates stamped page numbers 00455-00616.

**RFP NO. 8**: The full search warrant packet: affidavit/application (all drafts), exhibits, proposed order, signed warrant, return/inventory, and internal/external communications (including with any prosecutor or judge's staff) about the warrant.
**RESPONSE TO RFP NO. 8**: Upon information and belief, the responsive information that is in the possession, control or custody of the City of Troy is included in Auburn Hills Case Report NO. 23-0018832 and Bates stamped page numbers 00129-00146 which is attached.

21

**RFP NO. 9**: All materials the affiant (Defendant Officer Scott Allan) reviewed or relied upon before swearing the affidavit (photos, videos, notes, reports, statements, lab/medical information, and related communications).

**RESPONSE TO RFP NO. 9**: Upon information and belief, the responsive information that is in the possession, control or custody of the City of Troy is included in Auburn Hills Case Report NO. 23-0018832 and Bates stamped page numbers 00139-00146 which is attached.

**RFP NO. 10**: Chain-of-custody and laboratory materials for Plaintiff's evidential blood sample: collection/handling/transport/storage; chromatograms; QA/QC; instrument maintenance/calibration logs; bench notes; proficiency testing; analyst certifications; any re- analysis; and related communications (lab/hospital/EMS/prosecutor).

**RESPONSE TO RFP NO. 10**: Upon information and belief, the responsive information that is in the possession, control or custody of the City of Troy is included in Auburn Hills Case Report NO. 23-0018832 and Bates stamped page numbers 00141-00148 which is attached.

**RFP NO. 11**: Troy PD policies/guidelines/training on OWI investigations, warrant practice, bodily-intrusion/blood draws, and preservation of exculpatory evidence in effect on the Incident date and all versions from September 22, 2013 to present.

**RESPONSE TO RFP NO. 11**: Troy Police Department General Order No. 9 will be produced upon the execution of a protective order.

**RFP NO. 12**: All communications with hospitals/EMS concerning medication/sedation/analgesia administered to Plaintiff prior to the blood draw, and any medical-legal guidance Troy uses regarding timing/pharmacologic effects on blood testing.

**RESPONSE TO RFP NO. 12**: Upon information and belief, Defendant does not have any responsive documents in its possession, control or custody.

**RFP NO. 13**: All communications with prosecutors regarding intake/charging, review packets, warrant requests for charges, evidence sufficiency, declines/dismissals, and case closure.

**RESPONSE TO RFP NO. 13**: Defendant objects to this request because it is overly broad, unduly burdensome, and not narrowly tailored.

22

**RFP NO. 14**: Criminal case file maintained by Troy PD for Plaintiff's matter (booking, property/evidence logs, correspondence, discovery sent/received).

**RESPONSE TO RFP NO. 14**: Responsive material that is in the custody, control, and possession of the City of Troy is attached.  See Troy Case Report No. CR 230028389 at Bates stamped pages numbered 00210 – 00238.

**RFP NO. 15**: All policies/SOPs/guidelines enacted by Troy PD (and prior versions since September 22, 2013), including but not limited to those concerning:

h)      Emergency vehicle operations, speed, red-light/stop-sign entry, lights/siren usage, intersection clearing, pursuits vs. rapid response;

i)      BWC/ICV activation, buffering, retention, audit and non-compliance discipline;

j)      OWI standards; warrant practice; bodily-intrusion/blood draw; chain-of-custody;

k)      Report writing, narrative integrity, truthfulness, corrective measures;

l)      IA/OPS intake, investigation, discipline; complaint tracking; EIS/early-warning systems;

m)      Collision/Pursuit/After-Action Review Boards and required remedial training;

n)      Evidence/ESI retention and litigation holds;

o)      Adoption/usage of Lexipol or IACP model policies by any name otherwise known;

p)      Conflicts of interest and nepotism;

q)      Interoperability, mutual aid, and inter-agency cooperation with Auburn Hills PD, SOCCIT (Southeast Oakland County Crash Investigation Team), and any other law enforcement agencies,

23

including copies of any such contracts or agreements.

**RESPONSE TO RFP NO. 15**:  Troy Police Department General Orders No. 5.17, 5.2, 9, 11, 13, 64, and 114 will be produced upon the execution of a protective order.

**RFP NO. 16**: Training curricula, lesson plans, tests, slide decks, videos, and for all Defendant Officers, sign-in sheets, rosters, testing and assessment records (scores on written tests, practical exercise evaluations, certification exams, remedial training), and policy acknowledgment records (signed acknowledgments of reading and understanding relevant policies, dates distributed and acknowledged) used for RFP 15(a)-(j) for the last ten (10) years, including remedial training after prior officer-at-fault collisions.

**RESPONSE TO RFP. NO. 16:** Defendant objects to this request for production because it is overly broad and unduly burdensome. In the spirit of cooperation, and without waiving the objection, a printout of available training records is attached at Bates stamped page numbers 00684-00804.

**RFP NO. 17**: MCOLES: agency submissions, compliance audits, in-service CE logs, annual training plans, and communications re certification/decertification/discipline for any Defendant Officer.

**RESPONSE TO RFP. NO. 17:** Defendant objects to this request for production because it is unduly burdensome. In the spirit of cooperation, and without waiving the objection, a printout of available training records is attached at Bates stamped page numbers 00385-00388.

**RFP NO. 18**: Critical Incident Reviews, After-Action Reports, Collision Review Board findings, Pursuit Review Board determinations, or Use of Force Review Board findings for:

a)     Any Troy officer (Defendant Officers or Other Officers) entering dark intersections at speed without lights/siren (last 10 years);

b)     Any officer-at-fault collision by Troy PD officers (Defendant Officers or Other Officers) (last 10 years);

c)     Any BWC/ICV activation policy violations by Troy PD officers (Defendant Officers or Other Officers) (last 10 years);

24

d)      Any defective warrant affidavits or misrepresentations to magistrates by Troy PD officers (Defendant Officers or Other Officers) (last 10 years);

e)      Any OWI investigations later dismissed or declined prosecution (last 10 years);

f)      Each Defendant Officer specifically - ALL critical incident reviews, collision reviews, or use of force reviews.

For each, produce: Initial review by supervisor; Chain of command review; Final determination and rationale; Recommended remedial actions; Whether remedial training was actually completed; Any follow-up audits or compliance checks.

**OBJECTION AND RESPONSE TO RFP NO. 18**: Defendant objects to this request because it is overly broad, unduly burdensome, and not narrowly tailored to lead to discoverable information relevant to the subject matter of this case.  This case is not related to a police pursuit nor is it a use of force case therefore that portion of this request is irrelevant.

**RFP NO. 19**: Policy reviews or revisions after the Incident (drafts, redlines, approval packets, City Council/Manager memoranda).
**RESPONSE TO RFP. NO. 19:** Defendant does not have any documents responsive to this request.

**RFP NO. 20**: All memoranda of understanding (MOUs), interoperability agreements, mutual aid agreements, or protocols between the City of Troy/Troy PD and Auburn Hills PD, SOCCIT, or any other law enforcement agency, including those governing outside agency investigations of officer-involved incidents.
**OBJECTION AND RESPONSE TO RFP NO. 20**: Defendant objects to this request because it is overly broad, unduly burdensome, and not narrowly tailored to lead to discoverable information relevant to the subject matter of this case.  In the spirit of cooperation and without waiving the stated objection, the available responsive documents are attached at Bates stamped page numbers 00316-00384.

**RFP NO. 21**: All SOCCIT formation documents, agreements, and

25

governance materials, including:

r)      Original SOCCIT formation agreement or MOU among all member agencies (Auburn Hills, Bloomfield Township, Troy, Bloomfield Hills, Birmingham, and Clawson);

s)      All amendments, modifications, or updates to SOCCIT agreements from inception through present;

t) SOCCIT bylaws, operating procedures, or protocols governing:

- Activation criteria and call-out procedures
- Member agency responsibilities and roles
- Cost-sharing formulas and financial arrangements
- Equipment purchases, ownership, and sharing protocols
- Joint training requirements and schedules
- Leadership structure and decision-making authority
- "Peer review" processes and standards

u)      SOCCIT annual reports, budgets, and financial documents from September 22, 2013 through present, including:

- Overtime cost-sharing summaries by member agency
- Equipment purchase and maintenance cost allocations
- Training expenditures and participant rosters
- Statistical summaries of SOCCIT activations by agency and incident type
- Any discussion of investigations involving member agency officers

v)      Minutes, agendas, or notes from SOCCIT member agency chief meetings, coordinator sessions, or governance meetings;

w)                          Any SOCCIT policy, protocol, memorandum, or guidance addressing:

- Conflicts of interest when member agency officer involved in crash
- When to request non-SOCCIT agency (MSP, Sheriff) to investigate
- Recusal, abstention, or independence procedures for member agency incidents
- Standards for objectivity and freedom from bias

x) Communications among SOCCIT member agency chiefs, command staff, orcoordinators regarding this Incident or investigations involving member

26

agency officers generally;

y)      SOCCIT "on-scene check sheets" or task completion checklists used for this investigation.

**OBJECTION AND RESPONSE TO RFP NO. 21**: Defendant objects to this request because it is overly broad, unduly burdensome, and not narrowly tailored to lead to discoverable information relevant to the subject matter of this case.  In the spirit of cooperation and without waiving the stated objection, the available responsive documents are attached at Bates stamped page numbers 00316-00322 and 00359-00381. Bates stamped pages 00323-00358 and 00382-384 concern police investigative techniques, references to these protocols have been removed due to safety concerns of officers and will be produced upon the execution of a protective order.

**RFP NO. 22**: All communications regarding SOCCIT involvement and the decision to continue with Auburn Hills, including:

a)      Communications among Troy PD command staff, Troy City Attorney's office, and Troy elected officials from September 22, 2023 through January 5, 2024 regarding:

- Whether to activate SOCCIT for this crash
- Whether SOCCIT was appropriate given member agency officer involvement
- When/whether to contact City Attorney
- Which agency should investigate

b) Communications from January 5, 2024 forward regarding:

- The Troy City Attorney's decision-making process
- Consideration of Michigan State Police, Oakland County Sheriff's Office, or other non-SOCCIT agencies as alternatives
- Reasons for selecting Auburn Hills (SOCCIT member) over non-SOCCIT agencies
- Discussion of SOCCIT membership, cost-sharing arrangements, or collaborative relationship

c)      The October 16, 2023 CLEMIS email exchange between Sergeant Eftink, Shelly Turner (CLEMIS), and Auburn Hills Chief Ryan Gagnon requiring "Chief to Chief" written approval "from both sides," and all

27

related communications including:

- The written approval from Troy Chief to Auburn Hills Chief
- Any discussions about this "IA-type" approval requirement
- Why such approval was necessary

d)      Communications between Troy PD Chief and Auburn Hills PD Chief Ryan Gagnon from September 22, 2023 through present regarding:

- The investigation request and approval process
- SOCCIT's role and continued involvement
- Information sharing and coordination
- Troy's access to investigation findings during the "Auburn Hills" phase

e)      Any communications between Troy SOCCIT members (including Defendant Officers) and Auburn Hills/Birmingham SOCCIT members regarding the investigation from September 22, 2023 through present;

f) Any internal Troy PD or City Attorney memoranda analyzing or discussing:

- Potential conflicts of interest in using SOCCIT vs. MSP/Sheriff

- Financial implications of SOCCIT vs. outside agency
- Whether SOCCIT membership compromised independence
- Legal risks of member agency investigating member agency.
  **OBJECTION AND RESPONSE TO RFP NO. 22**: Defendant objects to this request because it is overly broad, unduly burdensome, and not narrowly tailored to lead to discoverable information relevant to the subject matter of this case.  In the spirit of cooperation and without waiving the stated objection, the available responsive documents are attached at Bates stamped page numbers 00316-00384.

**RFP NO. 23**: All communications between Troy PD (including Defendant Officers, Defendant Officer Warzecha, and Other Officers) and Sergeant Bryan Eftink of Auburn Hills PD from September 22, 2023 through present, including:

a)      Communications during the September 22-January 9, 2024 period when Warzecha led investigation;

b)      Communications regarding the January 9, 2024 "turnover" of

28

materials;

c)      Communications after January 9, 2024 regarding investigation status, findings, or charging decisions;

d)      Troy's requests for updates, reports, or information from Auburn Hills;

e)      Troy SOCCIT members' continued access to or involvement in the investigation;

f)      Coordination regarding submission to Oakland County Prosecutor.

**OBJECTION AND RESPONSE TO RFP NO. 23**: Defendant objects to this request because it is overly broad, unduly burdensome, and not narrowly tailored to lead to discoverable information relevant to the subject matter of this case.  This information, if it exists, is more likely in the control, custody or possession of others.

**RFP NO. 24**: IA/OPS files, citizen complaints, use-of-force reviews, collision/pursuit reviews, and discipline records for each Defendant Officer (Evan Leithauser, Scott Allan, Alejandro Parra, Gail Parra, and Brian Warzecha) for the last ten (10) years.
**OBJECTION AND RESPONSE TO RFP NO. 24**: Defendant objects to this request because it is overly broad, unduly burdensome, and not narrowly tailored to lead to discoverable information relevant to the subject matter of this case.  In the spirit of cooperation and without waiving the stated objection, the available responsive documents are attached at Bates stamped page numbers 00389-00408.

**RFP NO. 25**: IA/disciplinary files and outcomes for any Troy officer (Defendant Officers or Other Officers) who failed to activate BWC/ICV or violated emergency-operation policies in the last ten years.
**OBJECTION AND RESPONSE TO RFP NO. 25**: Defendant objects to this request because it is overly broad, unduly burdensome, and not narrowly tailored to lead to discoverable information relevant to the subject matter of this case.  In the spirit of cooperation and without waiving the stated objection, Defendant states that upon information and belief of the undersigned, there are no responsive documents pertaining to the Defendants named in this lawsuit.

**RFP NO. 26**: Early-intervention/early-warning system (EIS) records, including:

a) Complete EIS/early warning system policy and procedures (trigger thresholds, intervention protocols, supervisory review requirements, documentation requirements);

b) For all Defendant Officers and for any Other Officers involved in the Incident: Complete EIS history showing all tracked metrics, any alerts/flags/threshold exceedances, supervisory interventions or counseling sessions, remedial training mandated through EIS, performance improvement plans;

c) System-wide EIS data (for pattern evidence): Number of officers who exceeded EIS thresholds (September 22, 2013-present), interventions actually implemented vs. triggered, effectiveness studies or audits of EIS program;

d) EIS software/vendor information (platform name and vendor, data fields tracked, reports generated, access logs showing who reviewed EIS data for Defendant Officers).

**RESPONSE TO RFP NO. 26**: Defendant does not have any documents or information that is responsive to this request.

**RFP NO. 27**: Discipline matrices/penalty guides used for the conduct alleged.
**RESPONSE TO RFP NO. 27**: Defendant does not have any documents or information that is responsive to this request.

**RFP NO. 28**: *Brady/Giglio*/impeachment materials and notifications by any name otherwise known, including:

a) Any *Brady/Giglio* lists, "do-not-call" or disclosure lists naming any Defendant Officer;

b) Communications with prosecutors concerning impeachment or credibility issues for any Defendant Officer;

30

c)      Prior sustained findings or admissions relating to dishonesty, untruthfulness, false reporting, evidence handling, warrant/affidavit defects, or policy breaches implicating credibility for any Defendant Officer;

d) Any *Henthorn*-style reviews, disclosures, or related correspondence.

**RESPONSE TO RFP NO. 28**: After a search of known and available records, the undersigned is not aware of any documents or information that is responsive to this request.

**RFP NO. 29**: Shift rosters, unit assignments, supervisor duty logs (by any name known) for the Incident date showing all officers (Defendant Officers and Other Officers) on duty and involved.
**RESPONSE TO RFP NO. 29**: Responsive document produced at Bates stamped page number 00315.

**RFP NO. 30**: Records of any prior collision(s) or pursuit incidents involving any Defendant Officer resulting in City review, findings, remedial training, or restrictions (with outcomes and supervisory action).
**RESPONSE TO RFP NO. 30**: Defendant objects to this request because it is overly broad, unduly burdensome, and not narrowly tailored to lead to discoverable information relevant to the subject matter of this case.  This case does not involve a pursuit and only one of the named individual officers was involved in collision. In the spirit of cooperation and without waiving the stated objection, responsive information is produced at Bates stamped page numbers 00255-264

**RFP NO. 31**: City risk-management files, notices of claim, reserve/evaluation notes, and insurer/TPA communications concerning the Incident.
**RESPONSE TO RFP. NO 31:** Defendant asserts the attorney-client privilege and attorney work product privilege.

**RFP NO. 32**: Insurance, indemnification, and coverage materials, including:

a) All insurance policies (primary, excess, and umbrella) in effect on September 22, 2023, including declarations pages showing limits, retentions, and covered parties; full policy language for

§1983 coverage provisions; any exclusions, endorsements, or riders; self- insured retention amounts;

b) Coverage determinations and communications between City and Michigan Municipal Risk Management Authority (MMRMA), City and any third-party administrators, City and defense counsel regarding coverage/defense;

c) Indemnification agreements or resolutions: City ordinances, resolutions, or policies requiring indemnification of officers; any individual indemnification agreements with Defendant Officers; statutory authority for indemnification (cite MCL sections);

d) Actual indemnification history: Has City ever refused to indemnify an officer? If so, when and why? Limits or conditions on indemnification (e.g., excluded for willful misconduct?);

e) Claims handling materials: Tender letters, reservation of rights letters, insurance carrier evaluation/reserve amounts (subject to privilege assertion), any coverage disputes or declination letters;

f) Excess/Umbrella policies: Full policy information including coverage limits and attachment points, any self-insured retention layers.

**RESPONSE TO RFP NO. 32:** responsive information is produced at Bates stamped pages numbered 00244-00254.

**RFP NO. 33**: All judgments, settlements, or fee awards in §1983 cases against Troy PD or Troy officers from September 22, 2013-present, including: Complaint and settlement agreement/judgment; Attorney fee petitions and awards; Indemnification payments.
**RESPONSE TO RFP. NO 33:** Defendant City of Troy has settled two (2) Civil Rights matters filed under 42 U.S. § 1983 since 2013. The settlement amounts are not public record, however, the Orders approving settlement disbursement and dismissing the cases are attached. *See attached* May v Morse, 11-14453, Order of Dismissal entered December 17, 2013; *See*

32

*also* Gillman v Green-Hernandez, 21-12762. Bates stamped page numbers 00237-243.

**RFP NO. 34**: City Council/Manager/Public Safety Committee minutes/packets/communications addressing pursuits/emergency operations, BWC compliance, warrant practices, or the Incident. **RESPONSE TO RFP. NO 34:** Upon information and belief of the undersigned, there are no responsive documents for this request.

B. Union Contracts & Labor Agreements

**RFP NO. 35**: All collective bargaining agreements, memoranda of understanding, labor contracts, or side agreements between the City of Troy and any police union, police association, or labor organization representing Troy PD officers (including Troy Police Officers Association and Police Officers Association of Michigan), including:

a) Current and all prior versions from September 22, 2013-present;

b) Provisions relating to: Internal affairs investigation procedures; Officer "Bill of Rights" or similar protections; Disciplinary procedures and grievance processes; Limitations on interview timing or conditions; Restrictions on use of prior complaints; Access to personnel files; Indemnification provisions; Representation rights during investigations;

c) Any side letters, MOUs, or informal agreements modifying these provisions;

d) Grievance filings or arbitrations involving disciplinary actions for emergency vehicle operation, BWC violations, or truthfulness.
**OBJECTION AND RESPONSE TO RFP NO. 35:** Defendant objects to this request because it is unnecessarily overbroad. In the spirit of cooperation and without waiving the stated objection, responsive information is produced at Bates stamped pages numbered 00265-00310.

I. Retention, Holds, and Missing Data

**RFP NO. 36**: Retention/deletion policies in effect from September 22, 2013-present (records, video, CAD, email, mobile, IA, training). **RESPONSE TO RFP NO. 36:** Retention policy produced at Bates

stamped pages numbered 00616-640.

**RFP NO. 37**: The litigation hold notice(s) issued in this matter (date, recipients, systems covered; content may be redacted for counsel advice).

**RESPONSE TO RFP NO. 37:** Documents produced at Bates stamped pages numbered 0035-39; 00499-00503

**RFP NO. 38**: For any BWC/ICV footage, CAD data, emails, or other ESI that City claims is missing, unavailable, or destroyed, produce:

a)      Audit logs and diagnostics: Axon/Evidence.com system logs for Defendant Officer Evan Leithauser's devices for the period September 15, 2023 through September 29, 2023 (week before and week after Incident); Any error reports, diagnostic tests, or technical analyses; Vendor communications about equipment malfunction;

b)      Retention policy compliance: Date footage should have been preserved under retention policy; Whether litigation hold covered this footage; If overwritten/deleted, why retention policy was not followed.

**RESPONSE TO RFP NO. 38**: Defendant objects to this request as to form. Defendant City does not "claim" that data is "missing." In the spirit of cooperation, please see Bates stamped pages 0311-0314; *See also* list of available audio/video recordings available through link that may be provided by AXON at Bates stamped pages numbered 00641-647.

**RFP NO. 39**: All declined prosecution decisions by Oakland County Prosecutor's Office involving:

a) Arrests made by any Defendant Officer (last 10 years);

b) OWI charges where blood results showed only prescription medication;

c) Cases declined due to probable cause deficiencies in warrant affidavits.

**RESPONSE TO RFP NO. 39**: Defendant objects to this request because it is overly broad and unduly burdensome.

**RFP NO. 40**: Prosecutor feedback communications: Any feedback letters or communications from prosecutors to Troy PD regarding warrant affidavit deficiencies; insufficient probable cause; *Brady/Giglio* disclosure requirements; case quality concerns.

**RESPONSE TO RFP NO. 40**: Defendant objects to this request because it is overbroad and unduly burdensome. In the spirit of cooperation and without waiving the stated objection, the undersigned is not aware of any responsive documents regarding any of the individual officers named in this lawsuit.

**RFP NO. 41**: Charging guidelines and protocols: Troy PD policies on consultation with prosecutors before seeking warrants; review procedures for warrant affidavits; training on materiality and *Brady* obligations.

**RESPONSE TO RFP NO. 41**: Defendant will produce Troy Police General Order No. 5.17 in response to this request upon the execution of a protective order.

**RFP NO. 42**: Protocols and MOUs between Troy PD and Oakland County Prosecutor's Office regarding:

d) Warrant application procedures;

e) Prosecutorial review before seeking search warrants;

f) Brady/Giglio disclosure obligations;

g) Case screening and charging decisions.

**RESPONSE TO RFP NO. 42**: Upon information and belief, the undersigned is not aware of any responsive documents in the possession, control or custody of the City of Troy.

**RFP NO. 43**: Training materials provided to officers on: Warrant affidavit requirements and materiality; *Brady* obligations and exculpatory evidence; Coordination with prosecutors; Consequences for defective affidavits.

35

**RESPONSE TO RFP NO. 43:** Troy Police Department General Orders No. 3, 5.17, and 9 will be produced upon the execution of a protective order.

**RFP NO. 44**: Documents regarding external oversight, including:

a) Department of Justice: Any communications with, investigations by, or reviews conducted by the U.S. Department of Justice regarding or otherwise referencing Troy PD (last 10 years);

b) State investigations: Any investigations by Michigan Attorney General, Michigan Commission on Law Enforcement Standards (MCOLES), or other state agencies regarding or otherwise referencing Troy PD concerning use of force practices, emergency vehicle operation, training deficiencies, or disciplinary procedures;

c) Consent decrees or settlement agreements: Any agreements with federal or state agencies requiring policy reforms, monitoring, or reporting;

d) External audits or reviews: Accreditation reviews (CALEA, Michigan Law Enforcement Accreditation Program); Insurance carrier risk assessments or loss control reviews; Independent monitors or consultants hired to review practices; Any "Henthorn"-type reviews or Brady compliance audits;

e) Legislative or oversight body reviews: City Council or Public Safety Committee reviews of Troy PD; Any reports, presentations, or findings regarding pursuits, collisions, use of force, or accountability;

f) Risk management assessments: Studies, reports, or analyses identifying liability risks or recommending policy changes.

**RESPONSE TO RFP NO. 44**: Documents regarding external oversight, including:

> a. Defendant does not have any responsive documents for this request.
>
> b. Defendant does not have any responsive documents for this

request.

c. Defendant does not have any responsive documents for this request.

d. Responsive documents are produced at Bates stamped pages numbered 00385-388.

e. Defendant does not have any documents responsive to this request.

f. Defendant does not have any documents responsive to this request.

**RFP NO. 45**: All communications between any officers (Defendant Officers and/or Other Officers) regarding the Incident from September 22, 2023 through September 25, 2023, including:

a) Texts, emails, or messaging app communications;

b) Communications about fault, liability, or charging decisions;

c) Communications about pursuing OWI charges against Plaintiff;

d) Communications about Defendant Officer Evan Leithauser's speed, lack of lights/siren, or missing video.

**RESPONSE TO RFP NO. 45**: Defendant is not in possession, control or custody of any communications between the Defendant Officers.

**RFP NO. 46**: All communications between any Defendant Officer and union representatives, union attorneys, Troy Police Officers Association (TPOA), or Police Officers Association of Michigan (POAM) regarding:

a) The Incident;

b) IA investigation;

c) Criminal investigation of Plaintiff;

37

d) This civil litigation.

**RESPONSE TO RFP NO. 46**: Defendant City of Troy is not aware of or in possession, control or custody of an any communications the Defendant Officers may have had with any union representatives, union attorneys, Troy Police Officers Association (TPOA), or Police Officers Association of Michigan (POAM).

**RFP NO. 47**: Documentation of union representation: Notices invoking representation rights; Attendance of union reps at interviews/statements; Union grievances filed related to this Incident. **RESPONSE RFP NO. 47**: Defendant City of Troy is not aware of or in possession, control or custody of any responsive documents for this request.

## DEFENDANT CITY OF TROY'S OBJECTIONS TO PLAINTIFF'S FIRST INTERROGATORIES TO DEFENDANT CITY

Defendant City of Troy objects to the interrogatories submitted by Plaintiff.  Under Fed. R. Civ. P. 33, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Plaintiff's Interrogatories exceed the number of interrogatories permitted by this court rule and these, combined with the above 97 Requests for Admission and 47 Requests for Production render these Requests, in totality, unduly burdensome. The vast majority of the information that Plaintiff seeks through these Interrogatories is contained in the responses to the requests for admissions and the accompanying document production rendering these Interrogatories duplicative of the information provided.

As to legal objections, respectfully submitted by

> s/Julie Quinlan Dufrane
> Attorneys for City of Troy
> 500 W. Big Beaver Road
> Troy, MI  48084
> (248) 524-3320
> j.dufrane@troymi.gov
> (P59000)
>
> May 1, 2026

39

## CERTIFICATION

I, Frank Shuler, do hereby declare under penalty of perjury:

1. I have reviewed Defendant Troy's Responses and Objections to Plaintiff's Frist Discovery Requests to Defendant City of Troy, including the attached Requests for Admissions, Requests for Production, and Interrogatories, and the responses are true and correct based on my personal knowledge and the information that is avaialable for me to review.
2. I hereby declare under penalty of perjury purusant to 28 U.S.C. 1746 that the foregoing is true and correct to the best of my knowledge.

This 29th day of April, 2026.

FRANK SHULER
Police Lieuteant
City of Troy Police Department

40

**INDEX OF DOCUMENTS PRODUCED**
**DEFENDANT TROY'S RESPONSES TO PLAINTIFFS' FIRST REQUEST FOR**
**PRODUCTION OF DOCUMENTS**

| PAGE RANGE | DOCUMENT DESCRIPTION |
| --- | --- |
| 001-00236 | CR 230018832, Auburn Hills Police Department Final Report; PIA Leithauser and Szczesny |
| 00237-00243 | Prior City of Troy lawsuits; Orders of dismissal and settlement disbursement |
| 00244-00354 | MMRMA Coverage documents |
| 00255-00264 | Leithauser vehicle collision information; Supervisor's reports |
| 00265-00310 | TPOA Collective Bargaining Agreement |
| 00311-00314 | Communication with AXON re: video retrieval |
| 00315 | Shift assignments |
| 00316-00322; 00359-00381 | Interlocal Agreement re: CIT (first iteration of SOCCIT) Interlocal Agreement re: SOCCIT |
| 00323-00358; 00382-384; | Bates stamped pages related to SOCCIT crash investigation protocols will be provided under a protective order |
| 00385-00388 | Most recent Accreditation information |
| 00389-00498 | Prior crash information |
| 00409-00437 | CR 23-0028389-001, Troy Police Department Report re: PIA Leithauser/Szczesny |
| 00438-00443 | Information sent to MMRMA |
| 00440-00451 | CR 23-0028744, Troy Police Department Report; PIA Leithauser/ Szczesny |
| 00452-00454 | Email between Captain Gobler and Lori Grigg Bluhm re: Oakland County Prosecutor dismissing charges; email between Julie Quinlan Dufrane and Laura Camaj, Oakland County Prosecutor |
| 00455-00616 | Vehicle records PV 931 |
| 00617-00640 | Retention Schedule, Law Enforcement, followed by Troy PD (Also available on City of Troy's website) |
| 00641-00647 | List of preserved audio/video recordings available through AXON link |
| 00648-00649 | Auburn Hills UD-10 report |
| 00650-00683 | TCOA Collective Bargaining Agreement (current) |
| 00684-00715 | Training records printout Officer Allan |
| 00716-00726 | Training records printout Officer Leithauser |
| 00727-00736 | Training records printout Officer A. Parra |
| 00737-00804 | Training records printout Officer G. Parra |

**INDEX OF DOCUMENTS PRODUCED**
**DEFENDANT TROY'S RESPONSES TO PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Audio Files to be produced in a manner selected by Plaintiff's Counsel

| File name | Date | Type | Size |
|---|---|---|---|
| 23-28387_radio | 9/25/2023 11:44 AM | WAV Audio File (VLC) | 3294 KB |
| 23-28389_phones | 9/25/2023 7:49 AM | WAV Audio File (VLC) | 1883 KB |
| 23-28389_radio | 9/25/2023 8:48 AM | WAV Audio File (VLC) | 20,918 KB |

External source Videos to be produced via Axon Link

| File Name | Location |
|---|---|
| Gas Station Video | AXON Link |
| 11-22 Shell Video | AXON Link |

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

**THOMAS SZCZESNY,**

      Plaintiff,

v.

**CITY OF TROY**, a municipal corp, et al

      Defendants.
_____/

Case No:  2:25-cv-12836-GAD-EAS
Hon. Gershwin A. Drain
Mag. Judge: Elizabeth A. Stafford

| | |
|---|---|
| **Law Offices of Jason A. Waechter**<br>**AARON R. MARTINEZ (P86228)**<br>**JASON A. WAECHTER  (P47651)**<br>Attorneys for Plaintiff<br>19080 W. Ten Mile Road<br>Southfield, MI 48075<br>(248) 355-4701  /  Fax: 248-281-0006<br>aaron@877powerlaw.com;<br>jason@877powerlaw.com<br>Paralegal Cris Vivian:<br>cris@877powerlaw.com | **Troy City Attorney's Office**<br>**LORI GRIGG BLUHM (P46908)**<br>**JULIE QUINLAN DUFRANE (P59000)**<br>Attorneys for Defendant City of Troy<br>500 W. Big Beaver Road<br>Troy, MI 48084<br>(248) 524-3320<br>bluhmlg@troymi.gov;<br>j.dufrane@troymi.gov |

**Rosati Schultz Joppich & Amtsbuechler PC**

**MARGARET T. DEBLER (P43905)**
**AMANDA P. WASKE (P81128)**
Attorneys for Defendant Officers
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331
(248) 489-4100
mdebler@rsjalaw.com; awaske@rsjalaw.com
_____/

## PROOF OF SERVICE

      The undersigned certifies that a copy of Defendant Troy's Responses and Objections to Plaintiff's First Discovery Requests to Defendant City of Troy, which encompassed Requests for Admissions, Production of Documents and Interrogatories, was served upon all parties to the above cause of action to the attorneys of record at their respective addresses as shown on the pleadings on May 1, 2026 via email only.

/Julie Quinlan Dufrane
JULIE QUINLAN DUFRANE (P59000)
Assistant City Attorney

# EXHIBIT 3

 Outlook

---

## RE: Szczesny v City of Troy - Meet and Confer Request

---

**From** Aaron Martinez <aaron@877powerlaw.com>

**Date** Wed 6/24/2026 11:08 AM

**To** Julie Q Dufrane <J.Dufrane@troymi.gov>

**Cc** Cristin Vivian <cris@877powerlaw.com>; Mindy Brown <mindy@877powerlaw.com>

Hi Julie,

Just circling back one more time. Let me know if you have availability the rest of this week.

Thanks,
Aaron

---

**From:** Aaron Martinez
**Sent:** Thursday, June 11, 2026 2:08 PM
**To:** 'Julie Q Dufrane' <J.Dufrane@troymi.gov>
**Subject:** RE: Szczesny v City of Troy - Meet and Confer Request

Hi Julie,

Apologies for the delay on my part, I was out of the office and totally missed your email come through. I left you a voicemail to find a time that would work best to discuss this. Let me know if you have some dates/time available in the next week and we can plan a time to talk.

Thanks,
Aaron

---

**From:** Julie Q Dufrane <J.Dufrane@troymi.gov>
**Sent:** Monday, June 1, 2026 11:17 AM
**To:** Aaron Martinez <aaron@877powerlaw.com>
**Subject:** RE: Szczesny v City of Troy - Meet and Confer Request

Aaron:

I've just now had a chance to digest your letter and its contents.

I am wide open on Thursday, June 4, let me know if you have a time that works.  I'm potentially picking a jury on Friday, so I can't commit right now to being available on Friday.  The case could resolve tomorrow, and I can let you know in the afternoon if you don't have any time to set aside on Thursday.

Julie

---

**From:** Aaron Martinez <aaron@877powerlaw.com>
**Sent:** Friday, May 29, 2026 4:17 PM
**To:** Julie Q Dufrane <J.Dufrane@troymi.gov>

**Cc:** Jason Waechter <jason@877powerlaw.com>; Cristin Vivian <cris@877powerlaw.com>; Mindy Brown <mindy@877powerlaw.com>; Alexandra Baker <alex@877powerlaw.com>
**Subject:** Szczesny v City of Troy - Meet and Confer Request

> **CAUTION:** This email did not originate from within the City of Troy. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good Afternoon Julie,

Attached please find a letter concerning the above referenced matter.

Upon your review of this letter, please contact our office to set up a time to discuss this further.

Thank you!
Aaron

**Aaron R. Martinez |** Attorney at Law
aaron@877powerlaw.com



**Law Offices of Jason A. Waechter**
19080 W. Ten Mile Road, Southfield MI 48075
Phone: 248-355-4701 * 1-877-Power-Law * 1-877-Biker-Law
www.877powerlaw.com
www.themotorcyclelawyer.com

*This e-mail and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this e-mail and any attachments is strictly prohibited.  If you receive this e-mail in error, please immediately notify me at 248-355-4701 and permanently delete the original copy and any copy or printout of same.  Thank you.*

**CHECK OUT OUR FIRM'S RECENT RECORD**
**$27.5 MILLION VERDICT**
https://www.motorcyclelawyermichigan.com

# EXHIBIT 4

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**THOMAS SZCZESNY,**

        Plaintiff,

v.

**CITY OF TROY**, a municipal corporation,

**EVAN LEITHAUSER**, in his personal
and professional capacities,

**SCOTT ALLAN** in his personal and
professional capacities,

**ALEJANDRO PARRA**, in his personal and
professional capacities,

**GAIL PARRA**, in her personal and
professional capacities,

and

**BRIAN WARZECHA**, in his personal and
professional capacities,

        Defendants.

_____/

Case No:  2:25-cv-12836-GAD-EAS
Hon. Gershwin A. Drain
Mag. Judge: Elizabeth A. Stafford



**Law Offices of Jason A. Waechter**
**AARON R. MARTINEZ (P86228)**
**JASON A. WAECHTER  (P47651)**
Attorneys for Plaintiff
19080 W. Ten Mile Road
Southfield, MI 48075
(248) 355-4701  /  Fax: 248-281-0006
aaron@877powerlaw.com; jason@877powerlaw.com
Paralegal Cris Vivian: cris@877powerlaw.com

**Rosati Schultz Joppich & Amtsbuechler PC**
**MARGARET T. DEBLER (P43905)**
**AMANDA P. WASKE (P81128)**
Attorneys for Defendant Officers
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331
(248) 489-4100
mdebler@rsjalaw.com; awaske@rsjalaw.com
_____/

**Troy City Attorney's Office**
**LORI GRIGG BLUHM (P46908)**
**JULIE QUINLAN DUFRANE (P59000)**
Attorneys for Defendant City of Troy
500 W. Big Beaver Road
Troy, MI 48084
(248) 524-3320
bluhmlg@troymi.gov; j.dufrane@troymi.gov

**LAW OFFICES OF JASON A. WAECHTER**
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL DEFENDANT CITY OF TROY'S RESPONSES TO PLAINTIFF'S FIRST DISCOVERY REQUESTS**

At a session of the United States District Court
held in the Eastern District of Michigan
on this _____ date of _____, 2026

**PRESENT: HON. ELIZABETH A. STAFFORD, Magistrate Judge**

This matter having come before the Court on Plaintiff Thomas Szczesny's Motion to Compel Defendant City of Troy's Responses to Plaintiff's First Discovery Requests; the Court having reviewed the Motion, the Brief in Support with Exhibits, and any timely response filed by Defendant City of Troy; the Court being fully advised in the premises and finding that: (1) Plaintiff has demonstrated good-faith efforts to meet and confer in compliance with Federal Rule of Civil Procedure 37(a)(1) and E.D. Mich. LR 7.1(a); (2) Defendant City of Troy's discovery responses are evasive, incomplete, and deficient in the respects identified in Plaintiff's Motion and Brief in Support; and (3) the information sought is relevant, proportional to the needs of this case under Federal Rule of Civil Procedure 26(b)(1), and essential to Plaintiff's prosecution of this action:

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel is **GRANTED**.

**IT IS FURTHER ORDERED** as follows:

1. **Complete Discovery Responses — within 14 days.**

   No later than fourteen (14) days from the entry of this Order, Defendant City of Troy shall serve complete, verified, and supplemented responses to all requests for production identified as deficient in Plaintiff's May 29, 2026 Meet-and-Confer Letter, including without limitation Requests for Production Nos. 1, 2, 3, 5, 6, 7, 8, 13, 16, 18, 22, 23, 24, 25, 26, 28, 30, 31, 37, 38, 39, 40, 45, 46, and 47. All responses must fully comply with Federal Rules of Civil Procedure 26 and 34. Any response that qualifies production with the terms "available," "preserved," or any similar limitation must simultaneously identify, in the same response, which responsive records are no longer available, the reason for their unavailability, and the date on which they became unavailable.

2. **Protective Order or Immediate Production — within 7 days.**

   No later than seven (7) days from the entry of this Order, Defendant City of Troy shall either:

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006



(a) file a properly supported motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c)(1), accompanied by a supporting affidavit or declaration setting forth specific facts showing a clearly defined and serious injury that would result from disclosure, as to any materials it seeks to continue withholding on confidentiality grounds; or

(b) produce, without further condition or qualification, all documents currently withheld under Requests for Production Nos. 11, 15, and 21 on the basis that a protective order has not yet been entered.

Failure to file a Rule 26(c)(1) motion within seven (7) days of the entry of this Order shall constitute a waiver of any confidentiality objection to those requests, and production shall be required immediately upon expiration of that deadline.

3. **Privilege Log — within 7 days.**

No later than seven (7) days from the entry of this Order, Defendant City of Troy shall produce a privilege log fully compliant with Federal Rule of Civil Procedure 26(b)(5)(A)(ii) identifying each and every document withheld on grounds of attorney-client privilege, work product protection, or any other asserted privilege or protection. The privilege log shall include, for each withheld document: (a) the date of the document; (b) the identity of the author(s); (c) the identity of all recipients; (d) the general subject matter of the document, described with sufficient specificity to enable Plaintiff to assess the privilege claim without revealing privileged content; and (e) the specific privilege or protection asserted. To the extent any withheld document contains both privileged and non-privileged content, Defendant City of Troy shall produce a redacted version and identify the redacted portions on the privilege log.

4. **ESI Search Certification — within 14 days.**

No later than fourteen (14) days from the entry of this Order, counsel for Defendant City of Troy shall provide written certification, signed by counsel as an officer of the Court, for each and every request to which the City responded with a "no documents," "not aware of," "no communications," or substantively equivalent representation. The written certification shall specifically identify and document:

(a) the name and title of each custodian whose files and accounts were searched;

(b) each electronic system, server, repository, platform, device, and account queried, including but not limited to email systems, MDT systems, body camera evidence platforms, CAD systems, and any law enforcement records management systems;

(c) all search terms applied in connection with each system or repository searched; and

(d) the date ranges used for each search.

This obligation applies to, without limitation, the City's responses to Requests for Production Nos. 5, 23, 25, 26, 28, 45, 46, and 47.

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006



5. **Reproduction of Native Axon Video Files — within 14 days.**

No later than fourteen (14) days from the entry of this Order, Defendant City of Troy shall reproduce all video files previously produced via Axon link in their native file naming format as generated by the Axon system, without alteration, truncation, or substitution of any portion of the native file name. To the extent the native file name of any previously produced video file is no longer recoverable, counsel for Defendant City of Troy shall provide written certification identifying each such file, explaining the circumstances under which the native file name was altered or became unrecoverable, and identifying the date on which the alteration occurred.

6. **Litigation Hold Certification – Due Within 14 Days**

No later than fourteen (14) days from the entry of this Order, Defendant City of Troy shall produce its internal litigation hold notice issued to its own employees, officers, and agents in connection with this litigation, including the date the notice was issued, all recipients, and all systems and categories of records covered by the notice. If no internal litigation hold notice was issued at any time prior to the entry of this Order, counsel for Defendant City of Troy shall provide written certification confirming that fact, signed as an officer of the Court.

7. **Continuing Duty to Supplement**

Defendant City of Troy's obligations under this Order are continuing. Pursuant to Federal Rule of Civil Procedure 26(e)(1), Defendant City of Troy shall promptly supplement all responses ordered herein whenever it learns that any response is in any material respect incomplete or incorrect. The duty to supplement under this Order does not cease upon the close of the fact discovery period on August 12, 2026.

8. **Attorney Fees and Costs.**

Pursuant to Federal Rule of Civil Procedure 37(a)(5), the Court finds that Defendant City of Troy's failure to provide complete discovery responses and its failure to meaningfully engage in the meet-and-confer process were not substantially justified. Defendant City of Troy and/or its counsel of record shall pay Plaintiff's reasonable expenses, including attorney fees, incurred in bringing the Motion to Compel.

No later than 14 days from the entry of this Order, Plaintiff's counsel shall file and serve an itemized bill of costs and a supporting affidavit setting forth the time expended and the reasonable hourly rates applicable to the work performed in connection with the Motion to Compel. Defendant City of Troy shall have 14 days from service of Plaintiff's submission to file any written response. The Court will determine the amount of the fee and cost award by separate order.

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006



- 4 -

**IT IS SO ORDERED.**

_____
HON. ELIZABETH A. STAFFORD
United States Magistrate Judge
Eastern District of Michigan
Dated: _____

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006