LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**THOMAS SZCZESNY,**

Plaintiff,

v.

**CITY OF TROY**, a municipal corporation,

**EVAN LEITHAUSER**, in his personal and professional capacities,

**SCOTT ALLAN** in his personal and professional capacities,

**ALEJANDRO PARRA**, in his personal and professional capacities,

and

**BRIAN WARZECHA**, in his personal and professional capacities,

Defendants.
_______________________________________/

Case No: 2:25-cv-12836-GAD-EAS
Hon. Gershwin A. Drain
Mag. Judge: Elizabeth A. Stafford

**PROOF OF SERVICE**

The undersigned certifies that a copy of the document with Proof of Service affixed thereto was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses as directed on the pleadings on **October 16, 2026**:

VIA:

☐ U.S. Mail ☐ Federal Express ☐ Email
☐ Facsimile ☐ Hand Delivery
☒ **EFS [e-file & serve]**
☐ **ESO [e-serve, only via MiFILE]**

I declare under the penalties of perjury that this Proof of Service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

/s/ Aaron R. Martinez

**Law Offices of Jason A. Waechter**
**AARON R. MARTINEZ (P86228)**
**JASON A. WAECHTER (P47651)**
Attorneys for Plaintiff
19080 W. Ten Mile Road
Southfield, MI 48075
(248) 355-4701 / Fax: 248-281-0006
aaron@877powerlaw.com; jason@877powerlaw.com
Paralegal Cris Vivian: cris@877powerlaw.com

**Troy City Attorney's Office**
**LORI GRIGG BLUHM (P46908)**
**JULIE QUINLAN DUFRANE (P59000)**
Attorneys for Defendant City of Troy
500 W. Big Beaver Road
Troy, MI 48084
(248) 524-3320
bluhmlg@troymi.gov; j.dufrane@troymi.gov

**Rosati Schultz Joppich & Amtsbuechler PC**
**MARGARET T. DEBLER (P43905)**
**AMANDA P. WASKE (P81128)**
Attorneys for Defendant Officers
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331
(248) 489-4100
mdebler@rsjalaw.com; awaske@rsjalaw.com
_________________________________________/

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

**PLAINTIFF'S SUPPLEMENTAL PRE-HEARING FILING**

Plaintiff Thomas Richard Szczesny submits this supplemental filing at the Court's request following the October 8, 2026 status conference. At that conference, the Court requested a supplemental filing identifying Plaintiff's current position and providing the date of Plaintiff's surgery and Plaintiff's narrowed phone-inspection request. The issue of Plaintiff's request for depositions of Assistant Prosecutors Meisel and Camaj is not addressed here because the Court expressed a desire to resolve the issue of Plaintiff's deposition and the forensic examination first.

Plaintiff's position has remained consistent, but contingent on a fluid medical situation. Plaintiff has not attempted to avoid his deposition. Plaintiff has instead tried to determine, in real time, what accommodations would permit him to testify accurately and truthfully without imposing excessive pain. At the October 8 conference, Plaintiff explained that Mr. Szczesny's ability to sit for deposition had been "a fluid situation," and that counsel had participated in several meet-and-confers to determine what he would need to sit for deposition. Plaintiff has acknowledged that Defendants are entitled to depose him and that both sides' experts need his testimony. See Pl.'s Resp. to Defs.' Mot. to Compel, ECF No. 44.

Plaintiff respectfully requests that the Court allow Mr. Szczesny's deposition to proceed before surgery with reasonable accommodations. Plaintiff is not currently seeking bifurcation. That concept was previously proposed as one possible accommodation and declined. The simpler and more efficient approach is to allow the deposition to proceed now with accommodations, permit Defendants to continue obtaining updated medical records through trial, and adjust case-management dates thereafter if necessary.

Plaintiff also narrows his forensic inspection request to three custodians only: Defendant Evan Leithauser, Defendant Brian Warzecha, and Defendant Alejandro Parra. Plaintiff does not seek unrestricted imaging, review of private information, or confidential-informant material. Plaintiff seeks a targeted, supervised protocol designed to address the Court's privacy concerns

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

while preventing custodian self-selection and ensuring transparent ESI methodology.

## I. Mr. Szczesny's Deposition Should Proceed With Reasonable Accommodations.

### A. Plaintiff has consistently tried to make the deposition happen, subject to a fluid medical situation.

The core issue is not whether Mr. Szczesny is pain-free. He is not. The question is whether his medical condition requires delaying his deposition despite practical accommodations. Plaintiff submits that it does not.

Plaintiff previously proposed safeguards including shorter sessions, breaks as needed, permission to reposition or recline if medically necessary, suspension if pain prevents clear testimony, and completion over more than one day if needed. See Pl.'s Resp. to Defs.' Mot. to Compel, ECF No. 44. Plaintiff also proposed a recliner or comparable positioning support, breaks as needed, flexibility if pain arose, possible bifurcation, and updated medical records through trial. See Joint Report of Unresolved Issues, ECF No. 50. Plaintiff is no longer requesting bifurcation. At the October 8 conference, Plaintiff told the Court he wants to try to get the deposition done in one setting and does not want bifurcation.

Plaintiff's present request is narrower and simpler: the deposition should proceed once, before surgery, with reasonable accommodations. If additional medical developments occur after surgery, Plaintiff will agree that Defendants may obtain updated medical records through the time of trial. This addresses Defendants' stated concern about post-surgical developments without delaying expert discovery indefinitely.

### B. Mr. Szczesny's surgery is now scheduled for November 20, 2026, and the expected recovery reinforces the need to preserve his testimony now.

Since the October 8, 2026 status conference, Plaintiff has obtained additional information regarding the anticipated surgery. Mr. Szczesny's surgery is scheduled for November 20, 2026 with Dr. Patrick Wiater and Dr. Mark Jacobson. Ex. 1, Young Decl. ¶ 14. Plaintiff attaches the Declaration of Jon Young, R.N., B.S.N., Mr. Szczesny's nurse case manager, as Exhibit 1. Id. ¶¶

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

1-2.

Mr. Young attended an orthopedic clinic appointment for Mr. Szczesny with Dr. Wiater at Corewell Royal Oak Orthopedic Clinic. Id. ¶ 3. At that appointment, Mr. Szczesny underwent X-ray imaging of his pelvis, and Dr. Wiater then explained the imaging findings and details of the pending surgical procedures. Id. ¶¶ 4-5. Mr. Szczesny reported that, since falling in the bathroom, his right hip had remained painful, that the pain radiated down his right leg, often occurred without notice, and was sharp in nature. Id. ¶ 6.

Dr. Wiater explained that not only the back of the pelvis needed to be secured, but also the front of the pelvis. Id. ¶ 7. He explained that there was no healing on the right side and that it would have to be secured by a surgical pin. Id. Regarding the front side of the pelvis, Dr. Wiater explained that a urologist or urological surgeon would need to assist with the bladder, and that once Mr. Szczesny had a surgical opening, the surgical team would determine the most appropriate method and exact location to secure the area. Id. ¶ 8.

Dr. Jacobson then explained that he would assist during the posterior procedure by attempting to isolate nerve bundles amid scar tissue using advanced imaging during surgery. Id. ¶ 9. Dr. Wiater and Dr. Jacobson discussed the precautions, risks, and postoperative care associated with the procedure, including risks such as bleeding and infection. Id. ¶ 10. Mr. Young states that multiple days of surgical procedures may be necessary to achieve the surgical goals. Id. ¶ 11. Based on the discussion with Dr. Wiater and Dr. Jacobson, Mr. Young understood the proposed surgery or surgeries to be sensitive, complex, and potentially high-risk due in part to the extent of Mr. Szczesny's crash injuries, lack of healing on the right side of the pelvis, need to secure both the anterior and posterior aspects of the pelvis, bladder/urology involvement, and the need to identify and protect nerve bundles amid scar tissue. Id. ¶ 12.

Dr. Wiater stated and reiterated that Mr. Szczesny would probably be non-weight bearing again for approximately a minimum of three months after surgery. Id. ¶ 13. Plaintiff respectfully

submits that, practically speaking, this means Mr. Szczesny will be placed back near the beginning of his recovery process in terms of restrictions, mobility limitations, and care needs.

This information reinforces Plaintiff's position. The November 20 surgery is medically necessary, but it is also sensitive, complex, potentially high-risk, and expected to involve a significant postoperative restriction period. Plaintiff does not overstate that risk. But the Court should account for it. His deposition can be taken now, while the parties know he is able to testify, with reasonable accommodations that address his pain and medication concerns. That is the most direct way to preserve testimony, avoid avoidable scheduling disruption, and protect both sides' expert work.

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

**C. The medical records show chronic and longstanding pain, though presently exacerbated.**

Plaintiff does not minimize the seriousness of his current condition. Plaintiff's pain appears to have increased after the recent bathroom fall and hardware complication involving his spine and pelvis. Ex. 1, Young Decl. ¶ 6. The planned November 20 surgery confirms the seriousness of his current condition. Id. ¶¶ 7-14. But the record also shows that pain has been chronic and longstanding, not newly asserted for tactical purposes.

Physical therapy records possessed by the Defendants documented worsening symptoms, significant morning pain preventing him from getting out of bed until medication took effect, and aggravation with sitting, standing, walking, stairs, sit-to-stand, and bending. On April 16, 2026, a specialist consult documented throbbing bilateral-leg pain rated 5-8/10, constant bilateral low-back and hip pain rated 5-8/10, left elbow pain rated 6-7/10, and walking limited to approximately 20-30 feet with assistance before symptoms worsen. Id. At the status conference, Defense counsel acknowledged that Mr. Szczesny reportedly lives in significant daily pain and takes medication to combat that pain.

Those facts support accommodations. They do not require categorical delay. Plaintiff's

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

proposed accommodations are designed to allow accurate and truthful testimony without excessive pain. The upcoming surgery makes the timing issue more urgent, not less. Plaintiff is able to testify now with accommodations. After November 20, his recovery is expected to involve sensitive, complex surgery or surgeries and at least approximately three months of non-weight-bearing restrictions. Ex. 1, Young Decl. ¶¶ 11-13.

**D. Defendants previously agreed the deposition is expert-critical.**

Defendants' prior motion and representations confirm that Mr. Szczesny's testimony is important to expert discovery and case management. Plaintiff has already timely served expert reports upon the Defendants, and those reports have been without the benefit of Mr. Szczesny's testimony.

Defendants previously sought an order compelling Plaintiff to appear for deposition within the fact-discovery period or to show cause why it could not be timely completed. Defs.' Mot. to Compel, ECF No. 36. Defendants argued Plaintiff's testimony was necessary for the facts of the accident, criminal prosecution, injuries, pre-existing conditions, medical treatment, employment, noneconomic damages, and expert analysis by accident reconstruction, human factors, toxicology, neuropharmacology, medical, and economic experts. Defendants argued they were severely prejudiced by Plaintiff's failure to appear and that discovery had been one-sided. Defendants further argued it would be unduly prejudicial to proceed to expert discovery without Plaintiff's testimony.

At the October 8 conference, Plaintiff explained that Mr. Szczesny's testimony is important for all expert reports, including reconstruction and human-factors opinions, and that completing the deposition would avoid further disruption to the schedule. Defense counsel agreed that Mr. Szczesny's testimony is necessary for defense experts, including human-factors, accident-reconstruction, toxicology, pharmacology/toxicology, and other experts.

*Borror Property Mgmt. v. Oro Karric North, LLC*, 979 F.3d 491, 495 (6th Cir. 2020),

recognizes that once litigation begins, parties may be bound by formal litigation conduct, including pleadings, discovery admissions, and arguments to the court. See also *Eubanks v CBSK Fin. Grp., Inc.,* 385 F.3d 894, 897 (6th Cir. 2004). Plaintiff does not ask the Court to treat Defendants as estopped. Plaintiff asks only that the Court consider Defendants' prior representations for what they are: confirmation that the deposition is important to both sides' experts and to orderly case progression.

**E. The governing deposition cases support accommodations rather than categorical delay.**

Courts in this Circuit address medical limitations through particularized, practical protections. *Grech v. Ford Motor Co.,* No. 06-cv-13756, 2008 WL 4647862 *2 (E.D. Mich. Oct. 21, 2008), held that a party seeking to prevent or delay a deposition on medical grounds must make a specific and documented factual showing that the deposition will be dangerous to the deponent's health, and the court ordered accommodations rather than cancellation. *United States v. Mandycz,* 200 F.R.D. 353 (E.D. Mich. 2001), approved deposition safeguards including 2-3 hour blocks over several days, physician access, and family or representative presence where appropriate. *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 737 F. Supp. 3d 611, 617 (E.D. Mich. 2024), held that Rule 26(c) requires a particular and specific factual demonstration and that courts may specify deposition terms, including time and place, based on individualized hardship. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001), holds that Rule 26(c) good cause requires specific facts showing a clearly defined and serious injury, not conclusory statements.

The upcoming surgery also makes deposition timing a testimony-preservation issue. Plaintiff is not asking the Court to assume complications, and Plaintiff does not suggest that an adverse outcome is likely. But the record now shows that the November 20 procedure is sensitive, complex, potentially high-risk, may require multiple days, and is expected to return Mr. Szczesny to severe postoperative restrictions for at least approximately three months. Ex. 1, Young Decl.



LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

¶¶ 11-13. Taking his deposition now, with reasonable accommodations, preserves testimony while all parties agree his testimony is expert-critical. Waiting until after surgery creates avoidable risk that the deposition will be delayed, complicated, or impaired by postoperative restrictions, pain, medication, complications, or recovery needs. The better course is to preserve the testimony now and allow Defendants to continue obtaining updated medical records through trial.

The cases above do not require the Court to compel a pre-surgery deposition. They do, however, support the reasonable middle ground Plaintiff proposes: proceed with testimony under conditions that protect Plaintiff's health and preserve the integrity of his testimony. Plaintiff proposes a recliner or comparable positioning support, breaks as needed, permission to reposition or recline, flexibility if pain or medication interferes with testimony, and suspension or continuation only if medically necessary.

## II. If the Court Delays the Deposition, the Schedule Should Be Adjusted Narrowly.

Plaintiff respectfully submits that the deposition should proceed before surgery. But if the Court determines that the deposition should occur after surgery, Plaintiff requests a narrow and date-certain schedule, not an open-ended stay.

*Ohio Env't Council v. U.S. Dist. Court*, 565 F.2d 393, 396 (6th Cir. 1977), holds that the party seeking a stay must show a pressing need for delay and that neither the other party nor the public will suffer harm. The Sixth Circuit cautioned that courts must tread carefully in granting stays because parties have a right to determination of their rights and liabilities without undue delay. Id. *Moore v. Auto Club Grp.*, 2022 WL 16536216 (E.D. Mich. Oct. 28, 2022), applies stay factors including simplification, conservation of resources, prejudice or tactical disadvantage, and the posture of discovery and trial scheduling. *Gobah v. City of Hamtramck*, No. 21-cv-11828, 2022 WL 16833755 (E.D. Mich. November 9, 2022), recognized that delay can prejudice a civil-rights plaintiff seeking relief for alleged violations and that the public interest favors allowing civil-rights plaintiffs to seek remedies without delay. *Amacher v. City of Tullahoma*, 179 F.4th 999, 1007 (6th

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

Cir. 2026), emphasizes Rule 1's mandate for the just, speedy, and inexpensive determination of cases.

A complete stay is not necessary. *Grenke v. Hearst Commc'ns, Inc.,* No. 12-cv-14221, 2014 WL 6909883 (E.D. Mich. Dec. 8, 2014), denied a stay of all discovery where limited discovery was needed, while staying unrelated discovery only. The same principle applies here. If the Court has concerns about deposition timing, the remedy should be a targeted case-management order: set a deposition deadline tied to medical clearance or a defined post-surgery period, and tie expert deadlines to receipt of the deposition transcript.

That approach is consistent with Rule 16. *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 625 (6th Cir. 2002), holds that the primary Rule 16 good-cause measure is the moving party's diligence, with prejudice also relevant. *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003), holds that a schedule may be modified when the deadline could not reasonably be met despite diligence, and prejudice must be considered. *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005), reaffirms diligence and prejudice as relevant to Rule 16 good cause.

Because both sides agree the deposition is expert-critical, Plaintiff requests that, if the deposition is delayed, Plaintiff's expert report deadline be modified to be due 30 days after receipt of Mr. Szczesny's deposition transcript, with rebuttal and expert-discovery deadlines adjusted proportionally. Plaintiff raised that transcript-triggered expert-report proposal at the October 8 conference.

The same facts also support taking the deposition before surgery if the Court is willing to permit it. A completed deposition now would reduce the need for broader scheduling relief later, while still allowing Defendants to obtain updated medical records and, if appropriate, limited expert supplementation concerning post-surgical developments.

## III. Plaintiff Has Shown Good Cause for a Narrow, Supervised Inspection of Three Phones.

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

Plaintiff has narrowed the requested inspection to three custodians: Leithauser, Warzecha, and Alejandro Parra. At the October 8 conference, Plaintiff told the Court that the only devices currently sought are those of Leithauser, Warzecha, and Alejandro Parra, and that Plaintiff is no longer seeking Scott Allan's or Gail Parra's devices. Plaintiff seeks and proposes two relevant time periods: September 22 through approximately September 26, 2023 for all incident-related communications, and from September 26, 2023 through the January 2024 charging decision using narrower keywords.

Plaintiff does not seek a forensic inspection because he wants "more" discovery in the abstract. Plaintiff seeks verification because the existing record shows: responsive communications occurred on personal devices; self-collection has produced incomplete, cropped, unclear, or late-disclosed materials; key witnesses have memory failures or credibility issues; and the communications concern central disputed issues, including the crash, video recovery, charging referral, prosecutor communications, and whether charges were being sought against Leithauser.

This is the particularized showing required by the Sixth Circuit. *John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008), requires caution because forensic imaging is intrusive and should occur only with significant justification, privacy protection, and consideration of less intrusive alternatives. Plaintiff's request is designed to satisfy that standard, not avoid it.

**A. Leithauser's phone should be inspected because he has extensive memory gaps, produced selected and cropped screenshots, and his personal-device communications address central case issues.**

Leithauser is not a peripheral custodian. He was the driver of the patrol vehicle. Whether he was distracted, what he said after the crash, what he understood about video evidence, fault, job consequences, discipline, and deposition exposure are central issues.

Leithauser's deposition created substantial investigative gaps. Plaintiff previously identified more than 100 substantive instances in which Leithauser answered in his deposition that he did

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

not know, did not recall, did not remember, or gave a similar memory-limited response. That matters because the purpose of a phone inspection is not to harass Leithauser; it is to verify contemporaneous communications where his present memory is repeatedly unavailable.

The need is reinforced by how Leithauser searched and produced messages. Leithauser testified that he searched for text messages only with Michael Giordano, that he had only one phone at the time, and that his search was limited to text messages between himself and Giordano. Leithauser Dep. 89:1-25, attached as Exhibit 2. That is not a comprehensive search for communications about the incident, the investigation, or the aftermath.

The screenshots themselves create further reason for verification. Leithauser acknowledged the cropping function on an iPhone and testified that he took the screenshots at issue. Leithauser Dep. 93:1-25. When asked why certain screenshots lacked information such as time, signal, battery, and contact information, Leithauser testified that if anything was "screen shotted out," it was personal material ***he*** deemed unrelated to the crash. Id. at 93:18-25, 94:1-25, 95:1-18. Leithauser also testified that he made the determination about what would be cropped out and that he sent what he deemed "pertinent." Id. at 95:10-18.

That is precisely the problem. The custodian decided what was "pertinent," cropped or omitted surrounding material, and produced selected screenshots rather than a transparent export with metadata. Plaintiff and the Court cannot determine from those screenshots whether responsive communications were omitted, deleted, or overlooked.

The content that was produced confirms relevance. Leithauser's produced texts include communications that he was told no Axon dash cam was available from the crash, that gas-station video would be sent to MSP for time/distance analysis, that he asked whether the video had been watched, that he said he did not want to lose his job, that he later asked for further word on "my crash," that he asked whether "nothing to worry about" meant Plaintiff would be at fault, and that he texted that discipline could be used as "ammo against me in a deposition." See ECF 43-2,

Exhibit 2 of Pl.'s Resp. to Def. Officers' Mot. for Protective Order. These communications directly concern crash video, fault, job consequences, discipline, and deposition exposure.

Plaintiff is therefore not relying on speculation. The produced record shows relevant personal-device communications existed; Leithauser's search was limited; the production was screenshot-based and cropped; and Leithauser's testimony contains substantial memory gaps. A targeted inspection is necessary to verify completeness and recoverability.

**B. Warzecha's phone should be inspected because his prior denial was contradicted by late-produced texts, the screenshots remain unclear, and the texts concern core evidence and charging issues.**

Warzecha is likewise a central custodian. He served as the Troy/Auburn Hills liaison, communicated with Auburn Hills about the investigation, and followed up about Leithauser's prosecution status.

The record shows a concrete contradiction. Plaintiff previously explained that Warzecha had denied under oath that he communicated with Sgt. Eftink about the investigation after January 9, 2024, but minutes before Warzecha's July 31, 2026 deposition, Plaintiff received messages contradicting that denial and showing communications into March 2024. See Pl.'s Resp. to Def. Officers' Mot. for Protective Order, ECF No. 43. The deposition analysis identifies this as a major impeachment point: Warzecha denied communicating with Eftink after January 9, 2024, but later texts and deposition testimony showed post-January communications about "Evan's incident," prosecutor status, and "our view." Warzecha Dep. 189:6-21, attached as Exhibit 3.

Those late-produced messages were not marginal. The newly produced texts show that contrary to Defendants' assertions that the investigation had been turned over to Auburn Hills, Defendants were still actively involved in "Evan's crash," search warrants, statements, prosecutor referral, city-attorney meetings, prosecutor communications, whether charges were being considered or sought against Leithauser, and later prosecutor updates. See ECF 43-1, Exhibit 1 to Pl.'s Resp. to Def. Officers' Mot. for Protective Order. On January 4, 2024, Warzecha asked

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

Eftink whether he had "a packet with all the paperwork from Evan's crash," including "Search warrant, statements etc," and Warzecha stated that "it looks like we might send this to prosecutor for charges." Id. That communication occurred before the later decision to have Auburn Hills present the case, but it shows that the charging track had already formed before the formal presentation mechanism was finalized. On March 5, 2024, Warzecha asked for an update on "Evan's incident," asked for the prosecutor's stance, and Eftink responded that Lt. Hollenbeck had told the prosecutor "our view on the matter and that we aren't seeking charges on him, we just need it reviewed." Id.; Warzecha Dep. 189:6-21.

The production format also supports inspection. The Joint Report noted Plaintiff's position that the screenshots provided by defense counsel were small, difficult to read, and subject to interpretation. See Joint Report of Unresolved Issues, ECF No. 50. Plaintiff understands that clearer or enlarged versions were expected to be supplemented, but they have not been provided to date. A targeted inspection would eliminate uncertainty over what the messages say, whether the screenshots are complete, whether relevant surrounding messages exist, and whether any responsive content was deleted or omitted.

The broader record also shows substantive Warzecha-Eftink communications about evidence. Warzecha communicated with Eftink about Axon video recovery, toxicology evidence, Evidence.com video transfers, A. Parra's video, Shell video, video quality, and MSP lab reports. See Pl.'s Resp. to Def. Officers' Mot. for Protective Order, ECF No. 43. These topics go directly to Plaintiff's claims and Defendants' defenses.

The production method is also inadequate. Warzecha's response stated only that, after a "diligent search" of his personal device, he produced text-message correspondence with Sgt. Eftink, but did not identify search terms, applications searched, date limits, cloud-backup coverage, deleted-message recovery, metadata preservation, or forensic supervision. At the August 2026 status conference, the Court noted that Warzecha initially said there were no

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

communications and then supplemented before deposition, which showed the earlier representation was wrong.

This is a textbook verification issue. Plaintiff does not ask the Court to assume intentional withholding. Plaintiff asks the Court to recognize that a denial followed by late production of contradictory, difficult-to-read screenshots is a concrete reason to require a supervised, transparent search. Inspection will provide certainty without requiring the parties or the Court to speculate about unclear images, missing context, or the completeness of the production.

**C. Alejandro Parra's phone should be inspected because he is a credibility-critical witness whose conduct created undocumented evidence gaps and whose claimed observations drove the warrant path.**

Alejandro Parra is not being included because Plaintiff seeks a broad search of every officer. Plaintiff narrowed the request to Parra because his credibility, truthfulness, and communications are central to the investigation and prosecution issues.

Parra played two roles that created a serious evidentiary asymmetry. Parra testified he arrived as an officer first, but he turned off his body camera for a private conversation with Leithauser, claimed union-steward privacy, and could not preserve the content of what Leithauser told him. Parra Dep. 37:15-25, 38:18-25, 39:1-22, 40:1-25, 41:1, attached as Exhibit 4. Parra testified that after the body camera turned off, Leithauser "basically told me what happened," but Parra did not remember how Leithauser described it, and there was no other record of that private conversation. Id. at 40:10-25, 41:1. Parra testified that he turned off the camera because he represented Leithauser through the union, wanted the conversation to be private and not heard, and then later testified that Leithauser told him what happened but he did not remember the account. Id. at 37:15-25, 38:18-25, 39:1-25, 40:1-25.

At the same time, Parra generated the evidence path against Plaintiff. After reviewing body-camera video, Parra confirmed he said "Someone's going to have to do paper on him," that "him" meant Szczesny, and that the "paperwork" meant a search warrant affidavit. Id. at 28:21-25, 29:1-

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

10. Parra testified the basis for that statement was that he smelled alcohol, and when asked what facts he had when he made the statement, he answered: "Just what I smelled." Id. at 29:11-17, 31:1-5. Parra had not spoken directly with Szczesny, could not say whether he was near Szczesny for under or over a minute, did not conduct or observe field sobriety testing or a preliminary breath test, and testified that "long enough to smell" meant "to take a breath in." Id. at 31:1-25, 32:1-10, 73:8-24. Parra could not give an accurate distance in feet because he did not want to "get locked into something," and later could not say whether he was two, five, or seven feet away. Id. at 79:10-24, 80:1-19, 82:6-10.

The reliability issue is compounded by omissions in Parra's report. Parra testified he did not document Szczesny's eyes, any admission of drinking by Szczesny, smelling alcohol on Szczesny, his distance from Szczesny, or personally observing Szczesny appearing intoxicated in his report. Id. at 105:22-25, 106:1-19. Yet in discovery responses, Parra asserted that he was told by Plaintiff's girlfriend that she and Plaintiff had been drinking liquor and that he detected the smell of alcohol on her and emanating from Plaintiff. See RFA-AP-9 in Def. A. Parra Ans. to First Discovery Requests, attached as Exhibit 5.

Parra also transmitted evidence used in the warrant process. Parra testified his Campbell body-camera footage was later provided to Allan, that he returned to the station and probably told personnel to watch his bodycam, and that he recalled telling Allan: "Just you need to watch my bodycam footage. I talked to the girlfriend." Parra Dep. 56:5-10, 84:13-25, 85:23-25, 86:1-20.

The good-cause showing as to Parra is therefore specific: he intentionally created an unrecorded channel for Leithauser's contemporaneous crash account; he cannot remember the content of that account; he simultaneously generated the documented path used to pursue a blood warrant against Plaintiff; his claimed odor observation was not documented in his report; and the reliability of his communications and narrative is central to Plaintiff's malicious-prosecution and investigation-bias theories. A targeted phone inspection can test whether he communicated

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

about the crash, the off-camera conversation, Campbell, the warrant path, the prosecution, or the charging decision during the relevant periods.

Plaintiff recognizes the confidential-informant issue. At the October 8 conference, Defense represented that Alejandro Parra uses his personal phone to communicate with confidential informants in active homicide and narcotics investigations and offered to make him available for in-camera discussion. Plaintiff has no interest in that material. Plaintiff stated at the same hearing that there is a standing protective order and agreed that Plaintiff has no interest in confidential-informant data. The protocol can and should exclude CI material, allow first-look review, permit in-camera review if necessary, and prevent disclosure of irrelevant law-enforcement-sensitive material.

**D. The need for inspection is reinforced by investigative gaps and the lack of reliable alternative sources.**

The existing record contains repeated gaps that cannot be filled through memory testimony alone. There are still unresolved factual questions concerning what Leithauser told Parra off camera, whether Parra's claimed odor observation was reliable, why Parra's smell claim was not documented, why no one followed up on Parra's body-camera stoppages or Campbell's ambiguous "we" statement, and why the warrant omitted contextual facts adverse to Leithauser or favorable to Szczesny.

Nor can Plaintiff rely on custodian self-selection. At the October 8 conference, the Court recognized that the case law against allowing custodians to engage in self-collection is clear. The Court also stated that electronic discovery must be exchanged with transparency, including methodology, and rejected the view that search methodology is privileged.

The record reflects exactly why that matters here. The Plaintiff's statements in the Joint Report explained that messages produced shortly before Warzecha's deposition contradicted his prior denial of communications with Sgt. Eftink, that Leithauser produced selected messages he

believed Plaintiff should see, and that those screenshots appeared altered and cropped. See Joint Report of Unresolved Issues, ECF No. 50. Plaintiff proposed a less intrusive, staged protocol limited by custodian, date range, keywords, and case-related subject matter, with no complete forensic image or unfiltered dataset provided to Plaintiff. Id.

**IV. Plaintiff's Proposed Protocol Addresses Privacy Concerns While Preserving Evidence.**

Plaintiff's proposal is not unrestricted imaging. It is a targeted verification process. E.D. Michigan decisions support targeted protocols where communications may be incomplete. The Court in *Lipian v. University of Michigan*, No. 18-cv-13321 (E.D. Mich. Oct. 24, 2019), permitted forensic examinations of phones after the court found gaps in self-produced text-message records, but only under strict limits: an examiner agreeable to both sides, a defined text-message date range, disclosure only of messages not already in the requesting party's possession, no disclosure if the examination revealed only duplicative data, and no retention of mirrored data. *FCA US LLC v. Bullock*, 329 F.R.D. 563, 567 (E.D. Mich. 2019), supports the balanced proposition that concrete discrepancies may justify targeted forensic recovery, but mere suspicion does not justify broad imaging. *Flagg ex rel. Bond v. City of Detroit*, 252 F.R.D. 346 (E.D. Mich. 2008), further supports discoverability of relevant municipal text communications and protective procedures for privilege, privacy, and relevance review.

Several ESI related cases also support a transparent, supervised process rather than custodian self-selection. *Waskul v Washtenaw County Community Mental Health,* 569 F. Supp. 3d 626, 636 (E.D. Mich 2021), held pointedly that "[s]ince at least 2006, counsel have been required to take an active, affirmative role in advising their clients about the identification, preservation, collection, and production of ESI." *EEOC v. Formel D USA, Inc.,* No. 23-cv-11479, 2024 WL 4172527 (E.D. Mich. Sept. 12, 2024), in relying on *Waskul* and its progeny, further stated that counsel must test the accuracy of the client's ESI search and collection response unless

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

counsel supervises the search in person. *Cahoo v. SAS Analytics Inc.*, No. 17-cv-10657, 2019 WL 7971900 (E.D. Mich. June 25, 2019), quoting *L-3 Communications Corp. v. Sparton Corp.*, 313 F.R.D. 661, 667 (M.D. Fla. 2015), noted that crafting ESI search terms requires careful thought, quality control, testing, and cooperation with opposing counsel.

Plaintiff has proposed the following safeguards:

1. **Custodians:** Leithauser, Warzecha, and Alejandro Parra only.

2. **Data sources:** Text messages and messaging applications only, unless the examiner identifies another platform clearly used for incident-related communications.

3. **Date ranges:** September 22, 2023 through approximately September 25 or 26, 2023 for incident-related communications; and September 25 or 26, 2023 through the January 2024 charging decision using agreed search terms.

4. **Search terms:** The parties should meet and confer on terms, including variants of Szczesny, Chesney, motorcyclist, motorcycle, crash, accident, pursuit, reconstruction, Leithauser, Warzecha, Parra, alcohol, drunk, intoxicated, OWI, DUI, warrant, prosecution, charge, charging, prosecutor, body cam, BWC, camera, turn off, mute, Eftink, Auburn Hills, video, Axon, Shell, "our view," and "not seeking charges."

5. **First-look review:** Defense receives first-look review of extracted hits before production to Plaintiff.

6. **Privilege and privacy log:** Defense may withhold or log privileged communications, irrelevant private communications, confidential-informant material, active homicide or narcotics investigation material, and unrelated sensitive law-enforcement information.

7. **Confidential-informant safeguards:** No CI material should be produced to Plaintiff. CI material should be segregated, withheld, logged as appropriate, or submitted for in-camera review if disputed.

8. **Raw image protection:** At the October 8 conference, Judge Stafford stated that a forensic examiner could image a phone, extract text messages, and destroy the image afterward, provided there are tight timeframes and safeguards for confidential-informant information. Plaintiff agrees that raw images should not be produced to Plaintiff and should be destroyed or not retained after extraction unless the Court orders otherwise.

9. **Methodology transparency:** The examiner should provide a short methodology statement identifying the device examined, extraction method used, applications searched, date ranges searched, search terms applied, whether deleted messages were recoverable, whether responsive material was withheld for privilege, privacy, or confidential-informant review, and confirmation that nonresponsive private data was not disclosed.

This protocol directly addresses the Court's concerns. It protects privacy and law-enforcement

Law Offices of Jason A. Waechter
19080 W. Ten Mile Road, Southfield, MI 48075
Telephone 248.355.4701 • Facsimile 248.281.0006

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

confidentiality while allowing meaningful verification of communications that the existing record already shows are relevant, incomplete, unclear, or unreliable if left to custodian self-selection.

**V. Examiner Issue: Dalman, Primeau, and Bailey.**

Plaintiff understands the Court's view that a party-retained ESI expert is not automatically disqualified. At the October 8 conference, the Court stated that a defense-retained expert is not automatically objectionable if qualified and if no information suggests bias overcoming objectivity. Plaintiff does not contend otherwise. But if the Court chooses to appoint a neutral examiner, Plaintiff submits that Mr. Dalman is more appropriate than the defense consultants identified at the hearing. Plaintiff's discussions with Mr. Dalman have been limited to whether he would be available to assist if needed. Mr. Dalman indicated that he would be available. Plaintiff has not meaningfully conferred or consulted with him about the substance of this matter, and Plaintiff has not paid him for any consultation. Plaintiff will submit a declaration confirming those facts if the Court wishes.

By contrast, Defense disclosed that Primeau has been a consulting expert for Defendants in this case. Defense also disclosed that Scott Bailey of N1 Discovery had been consulted and would work with Primeau.

Federal Rule of Evidence 706 permits the Court to ask the parties to submit expert nominations and to appoint an expert agreed upon by the parties or of the Court's choosing, but only if the expert consents. Fed. R. Evid. 706(a). Rule 706 also requires the Court to inform the expert of the expert's duties, and the expert must advise the parties of any findings, may be deposed by any party, may be called to testify, and may be cross-examined. Fed. R. Evid. 706(b).

If the Court appoints a neutral under Rule 706 or otherwise selects a Court-supervised examiner, Plaintiff proposes Mr. Dalman because Plaintiff's contact with him has been limited to availability and he has not been meaningfully consulted or paid. If the Court permits Defendants' consultant to conduct the extraction, Plaintiff requests the safeguards set forth above, including

LAW OFFICES OF JASON A. WAECHTER
19080 W. TEN MILE ROAD, SOUTHFIELD, MI 48075
TELEPHONE 248.355.4701 • FACSIMILE 248.281.0006

methodology transparency, first-look review, privilege/privacy logging, confidential-informant protections, and destruction or non-retention of any raw image.

## VI. Requested Relief.

Plaintiff requests that the Court consider the November 20, 2026 surgery date and expected recovery in deciding deposition timing and enter an order providing the following relief:

1. Mr. Szczesny's deposition shall proceed before his November 20, 2026 surgery with reasonable accommodations, including a recliner or comparable positioning support, breaks as needed, permission to reposition or recline, flexibility if pain or medication interferes with testimony, and suspension or continuation only if medically necessary.

2. If the Court delays the deposition until after surgery, the Court should set a date-certain mechanism tied to medical clearance or a defined post-surgery window, and Plaintiff's expert reports should be due 30 days after receipt of Mr. Szczesny's deposition transcript, with rebuttal and expert-discovery deadlines adjusted proportionally.

3. Plaintiff's forensic inspection request should be limited to Defendants Leithauser, Warzecha, and Alejandro Parra.

4. Any forensic inspection should be conducted under the targeted protocol set forth above, including date limits, search terms, first-look review, privilege and privacy protections, confidential-informant safeguards, methodology transparency, and no production of raw images or irrelevant private material to Plaintiff.

5. If the Court appoints a neutral examiner, Plaintiff proposes Mr. Dalman. If the Court permits Defendants' consultant to conduct the work, Plaintiff requests the same safeguards and an opportunity to review the consultant's CV and raise any specific, good-faith objection.

Respectfully submitted,
**LAW OFFICES OF JASON WAECHTER**

Date: October 16, 2026

***/s/ Aaron R. Martinez***
AARON R. MARTINEZ (P86228)
JASON A. WAECHTER (P47651)
Attorneys for Plaintiff